■ UPSTATE NEW YORK SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA, Respondent, v CHRIST EVANGELICAL LUTHERAN CHURCH OF BUFFALO, Also Known as CHRIST LUTHERAN CHURCH OF BUFFALO, Also Known as EVANGELICAL LUTHERAN CHURCH, and Also Known as CHRIST AFRICAN AMERICAN LUTHERAN CHURCH, Appellant.—Judgment unanimously affirmed without costs. Memorandum: The Christ Evangelical Lutheran Church of Buffalo, New York (Christ Church) was extensively damaged by fire on January 26, 1990. Christ Church is a member congregation of the Evangelical Lutheran Church in America (ELCA) and of the Upstate New York Synod of ELCA (Synod). Defendant Christ Church appeals from a judgment declaring that plaintiff Synod is entitled to all right, title and interest to the property and assets of Christ Church, including fire insurance proceeds, and summarily dismissing Christ Church's counterclaim alleging that the Synod breached its fiduciary duty to Christ Church. Applying " 'neutral principles of law' " to this church property dispute (First Presbyt. Church v United Presbyt. Church, 62 NY2d 110, 115, rearg denied 63 NY2d 676, cert denied 469 US 1037), we conclude that Supreme Court properly granted summary judgment to plaintiff Synod.

It is undisputed that Christ Church is the owner of the real property and other assets of that church. The constitutional documents of Christ Church and of its hierarchical governing authority, the Synod, provide, however, that, if the membership of a congregation or its financial strength so decreases that it becomes impracticable to protect its assets from waste and deterioration, the Synod has the right to take charge and control of all property of the congregation and to hold, manage or dispose of such property. The constitution of ELCA and section 17-c of the Religious Corporations Law likewise authorize the Synod to take control of a congregation's property in order to protect the property from waste and deterioration, and the statute also provides that its provisions are "[s]ubject

to the provisions of the governing documents of congregations" (Religious Corporations Law § 17-c [2] [c]). Defendant Christ Church did not submit material in evidentiary form controverting the Synod's factual showing that the endowment fund of the congregation, which amounted to about $230,000 in 1980, was completely exhausted; that Christ Church was approximately $26,000 in debt; that gas and electric service to the property had been terminated for nonpayment; that ELCA, its predecessor (Lutheran Church in America) and the Synod had provided considerable financial assistance in an effort to sustain Christ Church; that the Synod had, before the fire, paid the premium for property and liability insurance on the property; and that, before the fire, Christ Church had discontinued worship services and its membership had been invited to attend services at other member congregations in the City of Buffalo. After the fire, the Synod determined to take charge of the property and assets of Christ Church and to terminate their relationship. Christ Church failed to exercise its right to appeal that decision to the Synod Assembly. Those undisputed facts establish that the membership and financial strength of Christ Church could not, as a practical matter, protect the property from waste and deterioration, and thus, that the Synod was entitled to a declaration that it is entitled to all right, title and interest in the property and assets of Christ Church.

Christ Church, in its counterclaim, alleged essentially that the diminution of its membership and finances was the result of the Synod's conduct in knowingly providing Christ Church with pastors who were inefficient and unable to lead the congregation and in taking steps to undermine the financial strength of the congregation, thereby violating a fiduciary duty owed to the congregation. That counterclaim was properly dismissed. It is settled law that the civil courts should not intervene in ecclesiastical matters such as church governance even though rights to church property may be affected incidentally *(see, Serbian Orthodox Diocese v Milivojevich,* 426 US 696, *reh denied* 429 US 873). "[R]eligious freedom encompasses the 'power [of religious bodies] to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine' " *(Serbian Orthodox Diocese v Milivojevich, supra,* at 721-722, quoting *Kedroff v St. Nicholas Cathedral,* 344 US 94, 116). The constitutional documents of the Synod provide an internal procedure for the resolution of such disputes, a procedure never used by Christ Church. In our view, consideration of the counterclaim allegations would

require a civil court impermissibly to intervene in matters of church governance. (Appeal from Judgment of Supreme Court, Erie County, Francis, J.—Declaratory Judgment.) Present— Boomer, J. P., Green, Balio, Boehm and Fallon, JJ.