OPINION OF THE COURT
Joseph Jiudice, J.
In this action by the plaintiff for a declaratory judgment *662 and for other relief, the defendant originally moved to dismiss all causes of action pursuant to CPLR 3211.
The court, pursuant to CPLR 3211 (c), treated the defendant’s motion as one for summary judgment.
The Church of the Holy Comforter, referred to hereafter as defendant, was incorporated as a Free Church under articles of incorporation made on May 11, 1859 pursuant to article 9 of the Religious Corporations Law. The corporate charter provided that the purpose of the incorporators was to found and continue a "Free Church under that name in the City of Poughkeepsie, in communion with the Protestant Episcopal Church in the Diocese of New York, and in the United States of America, and in accordance with its doctrine, discipline and worship”.
Shortly after its incorporation and by deed made by Thomas L. Davies and Jane C.E., his wife, and William A. Davies to the Church of the Holy Comforter on May 20, 1859, the defendant acquired a parcel of land on the westerly side of Davies Avenue in the City of Poughkeepsie being 125 feet both wide and deep and upon which the church building was erected. The grantors Thomas L. and William A. Davies were also trustees of the defendant and among its incorporators several weeks before. The deed was recorded in the Dutchess County Clerk’s office on May 23, 1859 in Liber 113 of Deeds, at page 634. It conveyed title to the defendant in fee simple qualified only by the provision that William A. Davies retained a reversionary right to the property for five years from the date of that delivery for the purpose of erecting buildings and fences as he deemed proper. No such right was ever exercised nor is there any record of its release by William A. Davies or his distributees. The conveyance or granting clause immediately preceding the metes and bounds description recited the grant to the defendant "and their Successors in Office forever for the purposes of a Free Church in Communion with the Protestant Episcopal Church in the Diocese of New York and in the United States of America”. In accordance with ecclesiastical ritual practice in use at the time, an Instrument of Donation was made and given by the Trustees to the Protestant Episcopal Church in the United States of America in the Diocese of New York within which it was requested that the then Provisional Bishop of the plaintiff take the "Church building under his spiritual jurisdiction as Bishop”. That instrument further relinquished all claim by the trustees "to any right of disposing of said building, or *663 allowing of the use of it in any way inconsistent with the terms and the meaning of this Instrument of Donation”. Delivery of this instrument occurred on October 25, 1860 following which and on the same date in accordance with existing religious rites the Provisional Bishop consecrated the church building.
By subsequent deed from William A. Davies and Frances M., his wife, dated May 10, 1880 and recorded in the Dutchess County Clerk’s office on May 12, 1880 in Liber 200 of Deeds, at page 570, defendant acquired an additional 25 feet by 125 feet abutting the southerly line of the first parcel; and by deed made by the same parties to defendant dated October 24, 1885 and recorded in the Clerk’s office on the same date in Liber 222 of Deeds, at page 521, defendant further acquired an additional lot 100 by 125 feet abutting the previous 25-foot parcel which then connected its property with the northerly side of Main Street; finally, by deed from Henry T. Lumb and Mary E. Lumb, defendant acquired an irregular parcel of property on the easterly side of Davies Place on which now stands the rectory and in which is contained the church chapel. That deed was dated February 29, 1912, and recorded in the Clerk’s office on April 2, 1912 in Liber 373 of Deeds, at page 347. No portion of any of this property has been conveyed or sold off except for a parcel appropriated by the State of New York in 1961: this affected the three parcels located on the westerly side of Davies Place and was so appropriated for the U.S. Route 9 North-South Arterial Highway. None of the last three deeds mentioned contained any qualifying recitations nor were there any exceptions or reversions.
In 1976 the Protestant Episcopal Church of the United States of America held a General Convention at which it modified and, in the opinion of many of its clergy and faithful, undermined the canons of what was viewed by the latter as the tradition and practice of the holy Catholic faith. Various member churches and those in spiritual communion with the Episcopal Church and its several dioceses took steps to withdraw from the national church. Defendant accordingly disassociated and separated itself on December 5, 1976 when, pursuant to a vote of the board of trustees and the congregation, it resolved to withdraw its free association with the Protestant Episcopal Church of the United States and from the plaintiff. At that time and absent a diocese, defendant further resolved to ally itself with an organization composed of similar congregations and known as The Fellowship of Concerned Church *664 men. It was under this status that defendant continued for the next year and a half when in July of 1978, the articles of incorporation were amended to restate defendant’s purpose, that being "to found and continue a Free Church under that name in the City of Poughkeepsie, Dutchess County, New York in communion with the Bishop and Diocese of the Resurrection which is a constituent part of the Holy Catholic Church in the Anglican tradition worshiping according to the traditional liturgies of the Anglican churches”. Defendant has continued since the amendment and remains in spiritual connection with the Diocese of the Resurrection at this time.
The plaintiff claims that title to the real property and other personal assets of this defendant is held in trust for the plaintiff and the first cause of action in the complaint alleges that the defendant has violated its legal, moral and sacred obligations by divesting the defendant’s assets to other religious and secular uses. The claim is also made that the plaintiff has been deprived of the benefit of that continued use and that the property may fall into disrepair and could be sold or encumbered.
By its second cause of action, the plaintiff alleges that the loss is a continuing one and will be so as long as this defendant fails to be a Free Church in communion with the plaintiff.
The third cause of action seeks this court’s judgment to give effect to the purpose of that trust under cy pres and transfer the title to all of the property of the defendant to the plaintiff. Inter alia, the plaintiff bases its position on the phrase "in communion with” as used in the original corporate charter and the deed to the first parcel acquired by the defendant and in the Instrument of Donation given by the defendant to the plaintiff on October 25, 1860.
On the other hand, it is the defendant’s position that title to all property and in particular the real property is held in the name of the defendant as a corporate entity and that no civil court can adjudicate what are spriritual differences predicated upon ritualistic practices, canon law and ecclesiastical policies which developed through the use of a "communion” phrase and the making of the Instrument of Donation.
It is this argument which forms the basis of the defendant’s motion which, in essence, is predicated upon the claim that no causes of action are stated by virtue of the development of and the present state of the law.
*665 In 1969, in the case of Presbyterian Church v Hull Church (393 US 440), the United States Supreme Court recognized that church property disputes implicate the Establishment and Free Exercise Clauses of the First Amendment, but held that courts are free to decide such disputes, if they can do so without resolving underlying controversies over religious doctrine. The Supreme Court, in effect, endorsed the "neutral principles of law” analysis which had been developed for use in all property disputes.
This rule was later restated and approved by the Supreme Court in Jones v Wolf (443 US 595 [1979]).
As a result of these decisions, even though members of a local group belonged to a hierarchical church, they may withdraw from the church and claim title to either personal or real property provided that they have not previously ceded the property to the denominational church.
In other words, the fact that this defendant was originally part of a hierarchical body does not necessarily bind a court if it is possible to decide the controversy through the application of "neutral principles of law”.
As recognized by the United States Supreme Court in Jones v Wolf (supra), the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes, and, most importantly, it prohibits civil courts from resolving such disputes on the basis of religious doctrine and practice, requiring that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization.
The "neutral principles of law” approach for resolving church property disputes relies on the language of deeds, the terms of local charters, State statutes governing the holding of church property, provisions in the constitution of the general church concerning the ownership and control of church property and other such documents and principles.
Basically, therefore, under the "neutral principles of law” doctrine, civil courts are bound to reach a determination provided it is based upon some legally cognizable document or principle basis.
The New York State Court of Appeals in First Presbyt. Church v United Presbyt. Church (62 NY2d 109, 121 [1984]) explained its recognition, adoption and application of the "neutral principles of law” doctrine as distinguished from the "judicial deference” rationale. The Court stated as follows:
*666 "We do so in the belief that when properly applied it avoids drawing civil courts into religious controversies by focusing on evidence from which the court may discern the objective intention of the parties and it also permits the State to protect its legitimate interests in securing titles to property. The rule is explicitly designed to achieve that end (see, Jones v Wolf, 443 US 595, 603-604, supra). It is completely secular in operation, it is flexible enough to accommodate all forms of religious organizations and it relies upon well-established principles of law familiar to Judges and lawyers. It also provides predictability so that religious organizations may order their affairs to account for its application. Moreover, we agree with those who have observed that the doctrine is preferable to deference because it does not prefer one group of disputants to another. The deference approach assumes that the local church has relinquished control to the hierarchical body in all cases, thereby frustrating the actual intent of the local church in some cases. Such a practice, it is said, discourages local churches from associating with a hierarchical church for purposes of religious worship out of fear of losing their property and the indirect result of discouraging such an association may constitute a violation of the free exercise clause. Additionally, by supporting the hierarchical polity over other forms and permitting local churches to lose control over their property, the deference rule may indeed constitute a judicial establishment of religion.”
Succinctly stated, in applying neutral principles, a court must determine from the above-referenced documents whether there is any basis for a trust or similar restriction in favor of the general church, "taking special care to scrutinize the documents in purely secular terms and not to rely on religious precepts in determining whether they indicate that the parties have intended to create a trust or restriction” (First Presbyt. Church v United Presbyt. Church, at 122, supra).
In the foregoing case the Court of Appeals recognized that there can be an implied trust in church property for the denominational church; however, to establish such trust there must be a sufficient manifestation of the intention to do so.
From this record it is clear that this defendant acquired the property in question on its own and there is no specific evidence either in the deeds which form a part of the record nor by any other evidence dehors these recorded instruments that this defendant intended to hold the property in trust.
*667 When the defendant disassociated itself and revised its corporate charter, the plaintiffs ecclesiastical law was not in place to govern the disposition of this defendant’s property.
As above noted, the articles of incorporation made in 1859 and upon which the defendant was founded as a Free Church together with the deed given contained the phrase "in communion with” and made reference to the plaintiff.
Plaintiff relies on this phrase and claims that notwithstanding its "Free Church” structure, defendant annexed its property temporally to the plaintiff. The plaintiff also relies on the "Instrument of Donation” which also contains the phrase "in communion with”.
In effect, this plaintiff is asking this court to assign to the phrase "in communion with” a legal meaning which would have the same effect of a granting clause in a deed of conveyance.
This court’s research leads to the inescapable conclusion that the phrase "in communion with” is an ecclesiastical and religious term and has no legal or secular meaning and cannot be so interpreted by application of the "neutral principles of law” rationale.
It is to be noted that the grantor in all of the deeds to this defendant recited only the defendant’s corporate name and it was only in the first deed for the church edifice that the foregoing phrase was used.
The deeds to this defendant contain no forfeiture or significant reversionary clauses. The certificate of incorporation was made pursuant to the Free Church statute (Religious Corporations Law art 9) rather than the statute under which it would have become an integral member of the plaintiff.
The historical record in this case exhibits a lack of any clear directive or polity on the part of the plaintiff as to the entitlement of property acquired by its member churches.
Finally, the "Instrument of Donation” upon which this plaintiff also relies and which repeats the phrase "in communion with” is not, in this court’s opinion, an instrument which gives rise to any civil rights nor can it be subject to secular interpretation. This is a religious instrument which pertains to ecclesiastical and spiritual matters and can in no way be interpreted to be a conveyance of title to property.
From the record presented, this court is unable to conclude that either an implied or express trust existed in favor of this *668 plaintiff. Likewise, the court determines from this record that the plaintiff’s relationship with this defendant was totally ecclesiastical and that the defendant was at all times in control of its temporal affairs.
The court does not reach the issue of adverse, possession since no such cause of action has been asserted by the defendant, no answer containing a counterclaim for this relief having been served.
The court, therefore, declares that there is no legal justiciable controversy between the parties and that the controversy between the parties is ecclesiastical in nature and cannot be determined pursuant to secular rules by this court. The court further declares that the plaintiff’s allegations together with its proofs fail by virtue of the "neutral principles of law” doctrine.
The defendant’s motion for summary judgment is granted and the plaintiff’s complaint, in its entirety, is dismissed.