[684 NYS2d 76]

TRUSTEES OF THE DIOCESE OF ALBANY et al., Respondents, v TRINITY EPISCOPAL CHURCH OF GLOVERSVILLE et al., Appellants.

Third Department, January 21, 1999

## APPEARANCES OF COUNSEL

*Robert M. Cohen,* Ballston Lake, for appellants.

*Tobin & Dempf,* Albany (*Michael L. Costello* of counsel), for respondents.

### OPINION OF THE COURT

SPAIN, J.

This action involves a dispute over the ownership of real and personal property in the possession and control of defendant Trinity Episcopal Church of Gloversville in Fulton County. Also at issue is the extent of this Court's jurisdiction over the property dispute arising out of a disagreement between disaffected members of Trinity Episcopal Church and plaintiff Bishop of the Albany Episcopal Diocese and plaintiff Trustees of the Albany Episcopal Diocese (hereinafter the Diocese). At the center of this controversy are four parcels of real estate. The parcel on which the church edifice stands was deeded to the Diocese in 1884 and the Diocese built a church on that parcel in 1886. The record title to that parcel has not changed to date.

One of the three remaining parcels was acquired in 1905 by Christ Episcopal Church, which had been using the church edifice as its place of worship. In 1918, a court approved the consolidation of Christ Episcopal Church with another local Episcopal church which resulted in the creation of Trinity Episcopal Church. As was each of its predecessors, Trinity Episcopal Church was incorporated under the Religious Corporations Law[1] in accordance with the canons and constitution of the Protestant Episcopal Church in the United States of America (hereinafter the Protestant Episcopal Church)[2] and with the consent of the Bishop and the Standing Committee of the Dio-

---

**1.** Religious Corporations Law article 3 and its predecessor, section 30 *et seq.,* provide for the incorporation and governance of "Protestant Episcopal Parishes or Churches".

**2.** The Protestant Episcopal Church is a hierarchical form of church government in which local parishes are subject to the constitution, canons, rules and decisions of their dioceses which, in turn, are presided over by a

cese. The two remaining parcels at issue, as is relevant to this action, were originally deeded to Trinity Episcopal Church in 1920 and 1925, respectively, also upon the consent and approval of the Bishop and the Standing Committee.

In August 1990, a schism occurred over the refusal of the Diocese, including the Bishop and its Trustees (hereinafter collectively referred to as plaintiffs), to ordain the then deacon-in-charge of Trinity Episcopal Church to the priesthood of the Protestant Episcopal Church. This dispute eventually terminated the parish's relationship with the Diocese when certain members of Trinity Episcopal Church voted to disaffiliate themselves from the Protestant Episcopal Church and the Diocese and to become affiliated with the schismatic defendant Anglican Episcopal Diocese South, Inc. Thereafter, defendants wardens and members of the vestry of Trinity Episcopal Church advised the Bishop that they no longer recognized his ecclesiastical jurisdiction over their parish. Eventually, the deacon-in-charge was ordained to the priesthood of the Anglican Episcopal Diocese South on the premises of Trinity Episcopal Church. In response, plaintiffs requested that defendants convey title to the real and personal property in the possession and control of Trinity Episcopal Church to the Diocese. The wardens and vestry members of Trinity Episcopal Church refused to comply with such request.

In December 1990, plaintiffs commenced this action requesting declaratory and injunctive relief under five different causes of action seeking (1) to impress an express trust on the real and personal property of Trinity Episcopal Church, (2) to impress a constructive trust on the same property, (3) an order for the possession and return of personal property based on conversion, (4) a court-ordered accounting of the real and personal property of Trinity Episcopal Church, and (5) an order for the possession of Trinity Episcopal Church's real property. Plaintiffs' express and constructive trust theories are based upon an amendment to their national canons enacted at the 1979 General Convention of the Protestant Episcopal Church which adopted sections 4 and 5 of title I, canon 7. These provisions declare that all real and personal property held by local parishes is held in trust for the benefit of the national Protestant Episcopal Church and the diocese in which the parish is located. This amendment to the national canons,

bishop who receives advice and counsel from a diocesan standing committee (see, *Watson v Jones*, 13 Wall [80 US] 679; *Rector of Church of Holy Trinity v Melish*, 4 AD2d 256, 261, *affd* 3 NY2d 476).

otherwise known as the "Dennis Canon", was adopted in response to the United States Supreme Court's decision in *Jones v Wolf* (443 US 595), which held that the constitution of a hierarchical church can be crafted to recite an express trust in its favor concerning the ownership and control of local church property (*see, id.*, at 606). After several motions and six years of discovery, plaintiffs moved for summary judgment and Supreme Court granted summary judgment on each of the five causes of action. Defendants appeal.

Initially, we reject defendants' contention that this case presents a nonjusticiable religious dispute which cannot be resolved without interfering in church doctrine or polity. The First Amendment, by operation of the Fourteenth Amendment, prohibits States from making "'laws respecting an establishment of religion, or prohibiting the free exercise thereof'" (*First Presbyt. Church v United Presbyt. Church*, 62 NY2d 110, 116, quoting US Const 1st Amend; *see*, US Const 14th Amend). Consistent with this principle, civil courts are precluded from interfering in religious disputes (*see, id.*, at 116) and thus, courts are prohibited from "resolving church property disputes on the basis of religious doctrine and practice" (*Jones v Wolf, supra*, at 602). Although "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes" (*Presbyterian Church v Hull Church*, 393 US 440, 449; *see, Jones v Wolf, supra*, at 602), a "State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively" (*Jones v Wolf, supra*, at 602). In other words, while church property disputes come under the scrutiny of the First Amendment, secular courts can resolve such conflicts so long as the underlying controversy does not involve determining religious doctrines or ecclesiastical issues (*see, Presbyterian Church v Hull Church, supra*, at 449; *Park Slope Jewish Ctr. v Congregation B'nai Jacob*, 90 NY2d 517, 521). Accordingly, a State is free to adopt any approach to resolving a church property dispute "'so long as it involves no consideration of doctrinal matters'" (*Jones v Wolf, supra*, at 602, quoting *Maryland & Va. Churches v Sharpsburg Church*, 396 US 367, 368 [Brennan, J., concurring]).

New York has adopted the "neutral principles of law" analysis, crafted by the United States Supreme Court, for use in resolving church property disputes (*First Presbyt. Church v United Presbyt. Church, supra*, at 120-121; *see, Park Slope*

*Jewish Ctr. v Congregation B'nai Jacob, supra,* at 521). Under this analysis, courts should focus on "the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property", taking special care to examine each of these documents in secular terms and not relying on religious precepts to determine whether the parties intended a particular result (*First Presbyt. Church v United Presbyt. Church, supra,* at 122; *see, Park Slope Jewish Ctr. v Congregation B'nai Jacob, supra,* at 521-522). Courts, however, should also take special care not to become involved in internal religious disputes or implicate secular interests in matters of purely ecclesiastical or religious concerns such as church governance or polity (*see, Presbyterian Church v Hull Church, supra,* at 449; *Archdiocese of Ethiopian Orthodox Church v Yesehaq,* 232 AD2d 332, 333; *Upstate N. Y. Synod of Evangelical Lutheran Church v Christ Evangelical Lutheran Church,* 185 AD2d 693, 694). Notably, the issue before this Court is not whether the local church had the right to terminate its relationship with plaintiffs.

In our view, although the controversy at hand was borne out of a schism between church officials regarding the ecclesiastical denial of a request to ordain a deacon to the priesthood of the Protestant Episcopal Church, the resolution of this property dispute can still be achieved through neutral principles of law without resort to judicial intrusion into matters of religious doctrine (*see, First Presbyt. Church v United Presbyt. Church, supra,* at 121-122; *Rende & Esposito Consultants v St. Augustine's R. C. Church,* 131 AD2d 740, 742; *Board of Mgrs. of Diocesan Missionary & Church Extension Socy. v Church of Holy Comforter,* 164 Misc 2d 661, 666).

Moving next to the merits, it is settled law that "even though members of a local [church] belong to a hierarchical church, they may withdraw from the church and claim title to real and personal property [held in the name of the local church], provided that they have not previously ceded the property to the denominational church" (*First Presbyt. Church v United Presbyt. Church, supra,* at 120; *see, Board of Mgrs. of Diocesan Missionary & Church Extension Socy. v Church of Holy Comforter, supra,* at 665). Accordingly, our analysis begins with an examination of the pertinent documents. As to the documents of conveyance, the language on the face of the deeds, concerning the three parcels of land surrounding the church

parcel, does not indicate that Trinity Episcopal Church or its predecessors acquired the property with the intention to hold it in trust for plaintiffs (*see, Board of Mgrs. of Diocesan Missionary & Church Extension Socy. v Church of Holy Comforter, supra*, at 666). Moreover, none of the deeds involved includes a trust restriction or forfeiture clause in favor of the plaintiffs (*see, First Presbyt. Church v United Presbyt. Church, supra*, at 122).[3]

As to its local charter, it is clear that despite the fact that its certificate of incorporation expressly acknowledges Trinity Episcopal Church's affiliation with the Protestant Episcopal Church and the Diocese, nothing in its certificate of incorporation indicates how church property is to be owned (*see, First Presbyt. Church v United Presbyt. Church, supra*, at 122). Significantly, however, the certificates of incorporation of Trinity Episcopal Church and its predecessors were drawn pursuant to Religious Corporations Law article 3 (or its predecessor), which confirms that Trinity Episcopal Church is an integral part of the Protestant Episcopal Church and the Diocese (*see, Board of Mgrs. of Diocesan Missionary & Church Extension Socy. v Church of Holy Comforter, supra*, at 667).

Our review of State law governing church property reveals that Religious Corporations Law § 12 (2) requires approval by the bishop and standing committee of the diocese to which the local parish belongs before the trustees of a local Protestant Episcopal Church parish can sell, mortgage or lease its real property. Other provisions of the Religious Corporations Law concerning the administration and operation of the Protestant Episcopal Church are silent as to the ownership of property between the parish and its diocese.

Finally, in examining the constitution of the Protestant Episcopal Church concerning the ownership and control of church property, a "court may look only to provisions relating to property and it must interpret them in a secular light" (*First Presbyt. Church v United Presbyt. Church, supra*, at 123). It is significant that title I, canon 7 of the national canons of the Protestant Episcopal Church was amended in 1979 to reflect an express trust provision as follows:

"Sec. 4—All real and personal property held by or for the benefit of any Parish, Mission or Congregation is held in trust for this Church and the Diocese thereof in which Parish, Mission or Congregation is located. The existence of this trust,

---

3. Title to the church edifice parcel is still in the name of the Diocese.

however, shall in no way limit the power and authority of the Parish, Mission or Congregation otherwise existing over such property so long as the particular Parish, Mission or Congregation remains a part of, and subject to, this Church and its Constitution and Canons.

"Sec. 5—The several Dioceses may, at their election, further confirm the trust declared under the foregoing Section 4 by appropriate action, but no such action shall be necessary for the existence and validity of the trust."

Hugh Jones, Chancellor to the Presiding Bishop of the Protestant Episcopal Church from 1986 to 1991 and a voting lay member of the House of Deputies, states, in a sworn affidavit, that the essential purpose of this amendment, the "Dennis Canon", was to impress an express trust in favor of the national Protestant Episcopal Church and the dioceses of which each local parish is a member. Jones also reports that the intent and purpose of adopting the "Dennis Canon" was to declare and enunciate existing canonical church law and not to effect a change in said law.

Although this express trust provision was absent from the national canons at the time Trinity Episcopal Church acquired the parcels of land surrounding the church edifice parcel, retroactive application of such trust provisions would not, as defendants contend, extinguish the real property rights of every local church or parish throughout New York, so long as a court finds that the trust provisions were declaratory of existing church policy (*see, Rector of Trinity-St. Michael's Parish v Episcopal Church*, 224 Conn 797, 821-822, 620 A2d 1280, 1292-1293). In our view, the record supports the conclusion that the "Dennis Canon" amendment expressly codifies a trust relationship which has implicitly existed between the local parishes and their dioceses throughout the history of the Protestant Episcopal Church. By accepting the principles of the Protestant Episcopal Church and the Diocese, defendants were subject to their canons, rules and practices. Defendants, for example, had to obtain approval of the Bishop and the Standing Committee prior to alienating or encumbering real property as required by title I, canon 7, sections 2 and 3 (*see,* Religious Corporations Law § 12 [2]). These provisions not only indicate that local church property was to be held for the benefit of the Protestant Episcopal Church and its dioceses, but they demonstrate the established customs of said church. Indeed, these provisions do not implicate issues of church governance but relate directly to control of church property

(*see, First Presbyt. Church v United Presbyt. Church*, 62 NY2d 110, 124, *supra*).

Likewise, the fact that Trinity Episcopal Church was incorporated pursuant to Religious Corporations Law article 3 confirms that it is an integral member of the Protestant Episcopal Church and that it adopted and is subject to the national church's constitution and canons (*see, Board of Mgrs. of Diocesan Missionary & Church Extension Socy. v Church of Holy Comforter*, 164 Misc 2d 661, 667, *supra*). Additionally, to find that an implied trust existed for the benefit of the denominational church, there must be sufficient manifestation of the intent to create a trust (*see, First Presbyt. Church v United Presbyt. Church, supra*, at 125).

In this case, the uncontroverted affidavit of Jones, coupled with Trinity Episcopal Church's own incorporation into the Protestant Episcopal Church under Religious Corporations Law article 3, establishes the parish's membership in the Protestant Episcopal Church and its acceptance of the hierarchical church's principles and policies including that church property was to be held solely for the over-all mission and benefit of the national church and its dioceses. Notably, throughout Trinity Episcopal Church's existence, the wardens and vestry of Trinity Episcopal Church not only sought permission of the Bishop and the Standing Committee to convey property held by the parish and for debt refinancing, but the members of Trinity Episcopal Church actively participated in numerous Church activities, such as presenting annual reports to the Diocese regarding its financial condition and attending the annual convention of the Diocese, signifying its solidarity with the Protestant Episcopal Church. Although "[t]he mere fact of [defendants'] association with the [Protestant Episcopal Church and its dioceses] * * * does not by itself support a finding that an implied trust was created" (*First Presbyt. Church v United Presbyt. Church*, 62 NY2d 110, 125, *supra*), the record shows that throughout Trinity Episcopal Church's existence the parish conducted its affairs in accordance with the constitution and canons of the Protestant Episcopal Church and was an integral member of its polity.

In our view, there is sufficient evidence of an intent to create an implied trust to hold church property in favor of the Protestant Episcopal Church and its dioceses based upon defendants' actions in conformity with the tenets and canons of the Protestant Episcopal Church and the national church's more recent establishment of an express trust. Accordingly, an express

trust and an implied trust exist for the benefit of plaintiffs with respect to the real and personal property held by defendants. Consequently, upon defendants' schism from the Protestant Episcopal Church and the Diocese, defendants forfeited the property in their possession to plaintiffs under the provisions of title I, canon 7, section 4 of the Protestant Episcopal Church.

Finally, Supreme Court properly granted summary judgment in favor of plaintiffs with respect to each of their five causes of action. Although it appears that defendants had some six years to conduct discovery, they failed to tender any evidentiary proof in admissible form to refute plaintiffs' claims other than submitting the deeds that show Trinity Episcopal Church was the title holder to the three parcels of land surrounding the church edifice and the conclusory allegations of their attorney (*see, Zuckerman v City of New York,* 49 NY2d 557, 562-563). Specifically, plaintiffs have not only demonstrated that this dispute does not concern ecclesiastical issues and is ripe for judicial determination, but they have established, as a matter of law, that an express trust and an implied trust exist with respect to the real and personal property at issue. Plaintiffs' entitlement to summary judgment with respect to their remaining causes of action flows logically from our foregoing analysis and conclusions.

MIKOLL, J. P., CREW III, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order is affirmed, with costs.