Srour v Board of Trustees of Sephardic Congregation of Har Ha Lebanon, Inc. (2004 NY Slip Op 50489(U))

[*1]

Srour v Board of Trustees of Sephardic Congregation of Har Ha Lebanon, Inc.

2004 NY Slip Op 50489(U)

Decided on June 3, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 3, 2004

Supreme Court, Kings County
Isaac Srour et al., Plaintiffs,
against
Board of Trustees of the Sephardic Congregation of Har Ha Lebanon, Inc., et ano., Defendants.
7044/02

Plaintiffs were represented by Asher B. White, Esq., 1219 Avenue J, Brooklyn, New York 11230. Defendants were represented by Reed Smith, LLP, 375 Park Avenue, New York, New York 10152.

Herbert Kramer, J.
defendants Board of Trustees of the Sephardic Congregation of Har Ha Lebanon, Inc. (Board of Trustees) and the Sephardic Congregation Har Ha Lebanon, Inc. (the Congregation) move for an order, pursuant to CPLR 3211 (a) (2) and (7), dismissing plaintiffs' complaint on the grounds that (1) the court lacks subject matter jurisdiction over plaintiffs' claims, which are religious in nature, and (2) such pleading fails to state a cause of action against defendants. Plaintiffs Isaac Srour, Daniel Chkouri, Israel Shlomi and Moshe Salem oppose the instant motion on the ground that the gravamen of their complaint against defendants is that defendants have failed to comply with their own by-laws, and therefore the court can determine plaintiffs' claims according to secular law and without resort to religious doctrine.
The Board of Trustees are the present trustees of the Congregation, a domestic non-profit religious corporation. The Congregation is an Orthodox Sephardic Congregation located in Brooklyn, New York. The instant action involves a dispute in regard to the current by-laws of the Congregation. Plaintiffs' complaint seeks a declaratory judgment "to remove any and all illegal by-laws and to enforce the rights of women members to vote." The current members of the Board of Trustees were voted into their positions on the Board in 1998. Allegedly, the first action the Board of Trustees took after the 1998 election was to amend the by-laws of the Congregation "to make certain of their re-election to the board of trustees in the following election that was to take place [approximately] three years later . . . [on] March 17, 2002."
The changes in the by-laws complained of by plaintiffs concern the criteria for membership in the congregation and related member voting rights. Plaintiffs aver that the previous by-laws of [*2]the Congregation stated that "[a]ny person of the Jewish Faith above the age of 18 years may be elected to membership in the Congregation." In 1998, the new Board of Trustees amended this by-law to read that "[a]ny person of the Jewish faith of Lebanese descent above the age of 18 years may be elected to membership in the Congregation" (emphasis added). Additionally, the pre-1998 by-laws described the Congregation as "an Orthodox Sephardic Congregation committed to the Halacha as prescribed in the Shulchan Aruch, according to Sephardic customs and traditions." However, the 1998 amended by-laws describe the congregation as "an Orthodox Sephardic Congregation committed to the Halacha as prescribed in the Shulchan Aruch, according to Sephardic Lebanese customs and traditions." (emphasis added).
In regard to the voting rights of women, the by-laws prior to 1998 stated that "a husband and wife shall each be entitled to cast one vote in a congregational meeting." The 1998 by-laws, however, do not make any provision for women to vote. Plaintiffs also aver that women members of the Congregation did not receive notices of the Congregation's meeting and election in 1998, were therefore denied their right to vote in the Congregation's 1998 election, and that, accordingly, any subsequent amendment of the pre-1998 by-laws by the Board of Trustees is null and void.
Additionally, plaintiffs' complaint also seeks "an order compelling the Board of Trustees to provide to the plaintiffs a current list of all members of the congregation in good standing eligible to vote in the election currently scheduled for March 17, 2002." By order of this court dated March 14, 2002, the Board of Trustees' attorney was directed to deliver the membership list for the Congregation to plaintiffs' attorney prior to said election.
Finally, plaintiffs' complaint seeks an order compelling the Board of Trustees to "provide to the plaintiffs all records of monies owed and paid for the past three (3) years by said congregational members evidencing membership in good standing." Plaintiffs aver that they are entitled to review such records in order to determine whether the members who are deemed eligible to vote by the Board of Trustees have actually fulfilled the financial requirements for membership as established by the amended by-laws.
In the instant motion to dismiss plaintiffs' complaint, the Board of Trustees argues that the court lacks subject matter jurisdiction over the plaintiffs' complaint because the membership criteria and voting rights established by the Board of Trustees in the amended by-laws are matters of religious doctrine and belief, which are not susceptible to judicial scrutiny. Additionally, the Board of Trustees argues that it has complied fully with this court's order, dated March 14, 2002, which directed that it supply plaintiffs with a membership list for the Congregation. Finally, the Board of Trustees argues that plaintiffs have failed to state a cause of action in regard to their claim that they are entitled to inspect records pertaining to the financial contributions of members in order to ascertain whether such members are currently in "good standing" for voting purposes. The Board of Trustees contends that such records are confidential and that the Board is allowed discretion in determining the financial "good standing" of its members. Moreover, the Board of Trustees argues that because the membership criteria embodied within the by-laws is a matter of religious belief and doctrine, the determination of such membership is not subject to the scrutiny of the court and the production of any documentation concerning same should not be judicially compelled.
As an initial matter, the court must determine whether it has the power to inquire into the propriety of the membership criteria currently contained within the amended by-laws of the Congregation. In determining whether or not a court has jurisdiction over a religious controversy, New York follows the "neutral principles" doctrine (see First Presbyterian Church of Schenectady v United Presbyterian Church, 62 NY2d 110, 120 ["The neutral principles of law analysis has not been [previously] explicitly adopted by this State . . .[however] [w]e do so in this action"]). The neutral principles analysis is employed by courts "in the belief that when properly applied it avoids drawing civil courts into religious controversies by focusing on evidence from which the court may discern the objective intention of the parties and it also permits the State to protect its legitimate interests . . . ." (id. at 121). Accordingly, "courts should not resolve such controversies in a manner requiring consideration of religious doctrine" (Avitzur v Avitzur, 58 NY2d 108, 114). Rather, pursuant to the neutral principles doctrine, "a State may adopt any approach to resolving religious [*3]disputes which does not entail consideration of doctrinal matters" (id.). "[T]he 'neutral principles of law' approach [is] consistent with constitutional limitations [concerning the separation of church and state] . . . [and] contemplates the application of objective, well-established principles of secular law to the dispute, thus permitting judicial involvement to the extent that it can be accomplished in purely secular terms" (id. [citations omitted]). Accordingly, a religious dispute may be resolved by neutral principles provided there are "(1) wholly secular legal rules whose application to religious parties or disputes does not entail theological or doctrinal evaluations[, and (2)] . . . neutral facts to which to apply those rules. Neutral facts consist of evidence from which the court may discern the objective intention of the parties . . . [such as] the language of . . . deeds, the terms of [a] local church charter . . . State statutes governing the holding of church property . . . [and the like] . . . without resorting to matters of doctrine or dogma" (St. Matthew Church of Christ Disciples of Christ, Inc. v Creech, 196 Misc 2d 843, 848, quoting Langford v Roman Catholic Diocese of Brooklyn, 177 Misc 2d 897, affd 271 AD2d 494 [internal quotation marks, ellipses and citations omitted]; accord Park Slope Jewish Center v Congregation B'Nai Jacob, 90 NY2d 517, 521; Karageorgious v Laoudis, 271 AD2d 653, 654; Jackson v Presbytery of Susquehanna Valley, 179 Misc 2d 704, 706; Board of Managers of the Diocesan Missionary v Church of the Holy Comforter, 164 Misc 2d 661, 665).
In regard to disputes and controversies concerning the qualifications for membership in a particular congregation, "it has long been the rule that a church has a right to determine the qualifications of membership; whether one is a member in good standing is a matter of an ecclesiastical nature, relating to the government and discipline of the church; and the church's decision as to such a matter is binding on the courts" (Matter of Kissel v The Russian Orthodox Greek Catholic Holy Trinity Church of Yonkers, New York, 103 AD2d 830, 831; accord Matter of Kaminsky, 251 AD2d 132, 137; affd 277 NY 524; see also Pappas v Passias, 271 AD2d 420, 421 [finding that whether "defendants improperly interfered with [plaintiff's] right to participate in an election for parish council and to continue his membership in the church, involve[d] matters of an ecclesiastical nature, and the courts will not interfere"). In contrast to matters pertaining to the qualifications for membership, however, a court generally does have jurisdiction to determine whether a church has abided by its own by-laws (see e.g. Matter of Venigalla v Alagappan, 307 AD2d 1041, 1041-1042 [court had power to void amended by-laws where congregation failed to follow it's own procedures, contained in the original by-laws, when it established the complained of amendments]; Karageorgious, 271 AD2d at 654 ["neither the determination [by the court] that a schism had occurred nor the application of the clear dictate of the relevant corporate by-laws required the court to resolve underlying controversies over religious doctrines in violation of the First Amendment guarantee of religious freedom"] [internal quotation marks and citations omitted]). Moreover, even though there is a general prohibition against judicial interference in issues concerning the establishment of membership criteria by a church or congregation, there is some authority that a court may determine whether the church or congregation in question has adhered to its own by-laws in making determinations as to the membership status of individual congregants (see e.g. Watson v Christie, 288 AD2d 29 [finding that "[t]his is not a case where plaintiff is seeking to force the church to perform some act against its will or seeking to define membership in a way opposed to the church. Plaintiff is simply trying to enforce his secular rights as a member, using the church's own criteria of membership and the pastor's own admission that plaintiff has not been expelled as a member"]; Islamic Center of Harrison, Inc. v Islamic Science Foundation, Inc., 262 AD2d 362, 363, lv denied 94 NY2d 752 [affirming Supreme Court's finding that "the individual plaintiffs were members, under both the by-laws of [the Islamic Cultural Center of New York] and the alternative definition of members [contained] in Religious Corporations Law § 195 which is based upon attendance and contributions"]).[FN1]
[*4]
In the instant case, the gravamen of plaintiffs' complaint concerns the amendment by the Board of Trustees of by-laws pertaining to the criteria for membership in the Congregation and the voting rights related thereto. Specifically, plaintiffs allege that the amended by-law, requiring that an individual be of "Lebanese descent" in order to be eligible for membership in the congregation, should be removed as an "illegal" by-law. Additionally, plaintiffs challenge the absence of any by-law allowing married women to vote, a practice that was allegedly sanctioned by the previous congregation by-laws. Plaintiffs contend that the election of the Board of Trustees in 1998 should be adjudged as null and void because the women members of the Congregation never received notice of that election, and that any amended by-laws enacted by the current Board of Trustees are similarly null and void.
In construing plaintiffs' complaint in light of the "neutral principles" doctrine, the court finds that it does not have the authority to determine plaintiffs' claims in regard to the membership by-laws of the Congregation. Although plaintiffs have attempted to frame their action as one "to prevent the defendant corporation from perpetrating a potentially terrible fraud upon the members of the Congregation by holding illegal elections and other actions that would necessarily be in total disregard and violation of their own by-laws," plaintiffs' complaint clearly disputes the validity of the "Lebanese descent" criteria for membership which is contained within the membership by-law, and does not seek a determination by this court in regard to the Board of Trustees' compliance or noncompliance with said by-law. This court is bound, therefore, by the well settled rule that "a church has a right to determine the qualifications of membership; whether one is a member in good standing is a matter of an ecclesiastical nature, relating to the government and discipline of the church," and, as a result, the court lacks any authority, in this instance, to disturb the membership by-law, as amended by the Board of Trustees, to include the "Lebanese descent" criteria (see Matter of Kissel, 103 AD2d at 831; see also Pappas, 271 AD2d at 420; Matter of Kaminsky, 251 AD2d at137). In order to determine the validity of the "Lebanese descent" membership qualification, this court would necessarily be constrained to undertake an impermissible foray into the religious culture, history, beliefs, practices and doctrine of the Congregation. Under the "neutral principles" analysis, the instant dispute over the "Lebanese descent" criteria contained in the membership by-law is not susceptible to resolution through the application of neutral principles of secular law, but rather can only be resolved by resort to theological inquiry (see St. Matthew Church of Christ, Inc., 196 Misc 2d at 843 ["A dispute over the control of a religious corporation may [only] be resolved judicially [where] the court passes judgment 'objectively' without involving theological matters"]). Accordingly, this court does not have subject matter jurisdiction over plaintiffs' claims concerning the "Lebanese descent" criteria contained in the membership by-law.
Similarly, the court's determination as to the absence of any voting by-law in regard to female members of the congregation would impermissibly entail the consideration of matters of the Congregation's religious belief, doctrine, custom and practice. Defendants maintain that women and men are kept separate at orthodox congregations in their community and that women do not vote in such orthodox congregations, a fact which has not been disputed by plaintiffs. Indeed, in support of their motion to dismiss, defendants have submitted a copy of a letter from Saul J. Kassin, the Chief Rabbi of Shaare Zion Cong. & Eastern Communities [of] Brooklyn, New York, addressed to the Congregation, stating "[l]et it be known that our custom is that only the men vote for the committee of the congregation. We shall continue to do so and blessed are all those who keep this traditional custom." Accordingly, the court finds that any determination on its part as to the voting [*5]rights and status of female members of the Congregation would impermissibly venture into the realm of theological inquiry and run afoul of the "neutral principles" doctrine.
The plaintiffs also argue that the current amended by-laws are null and void because the election of the current Board of Trustees in 1998 was not properly conducted pursuant to the by-laws which existed at that time. Plaintiffs contend that the by-laws which were in effect prior to the 1998 election provided that married women would be allowed to cast a vote in elections, but that women members, nonetheless, did not receive notice of the Congregation meeting and election in 1998, thus rendering such election a nullity and violative of the voting by-laws. Although courts have found that jurisdiction exists for purposes of determining whether a church or congregation has complied with its own by-laws (see e.g. Matter of Venigalla, 307 AD2d at 1041-1042; Karageorgious, 271 AD2d at 654), a court may only make such determination where it can decide the issue based on the by-laws alone, and not by reference to religious doctrine (see e.g. Avitzur, 58 NY2d at 14). In the instant case, any inquiry into the Congregation's compliance with said by-law would not merely entail the application of a neutral by-law which is susceptible to a secular construction, but would also implicate the underlying religious beliefs or practices of the Congregation in regard to the voting rights of women. In other words, any determination by the court as to the compliance or lack thereof with the voting by-law would necessitate an implied finding that such a by-law was valid in the first instance. Such a finding would by necessity implicate the underlying religious beliefs, practices and customs in regard to the rights of female Congregation members to vote, and especially given the evidence presented to the court in regard to Orthodox religious doctrine and practice in this area, would represent an impermissible encroachment by the court into areas which can only be determined by resort to religious sources as opposed to secular "neutral principles." Accordingly, as this court lacks jurisdiction to determine plaintiffs' claims as to the invalidity of the amended membership and voting by-laws, this court is constrained to dismiss plaintiff's first cause of action based on such claims.
As to plaintiffs' second cause of action seeking a current list of members of the Congregation eligible to vote in the March 17, 2002 Election for the Board of Trustees of the Congregation, the court notes that, by its order dated March 14, 2002, it directed that such list be supplied to plaintiffs prior to the election. Although plaintiffs assert, in their opposition, that the list provided to them is incomplete and includes a category of "lifetime" members which is not sanctioned by the by-laws, such statements are wholly conclusory. Plaintiffs have not averred specifically in what ways the list is incomplete, have not identified any putative congregation members who should have been, but were not included, on the list, or any instances where members who fulfilled the membership criteria contained in the amended by-laws were not included in the membership list, or were not allowed to vote at the election in violation of the membership and voting by-laws. Moreover, although it is unclear what is meant by the "lifetime members" category included in the membership list, plaintiffs have not shown, other than by conclusory statements to that effect, that such individuals are not actually members of the Congregation or are somehow ineligible to vote pursuant to the applicable by-laws. As the court already granted plaintiffs the relief sought in their second cause of action by its order dated March 14, 2002, and plaintiffs have not demonstrated that such membership lists were inadequate or otherwise improperly produced, plaintiffs' second cause of action, as presently stated, is hereby dismissed.
"Nevertheless, because it appears that the plaintiff[s] might be able to remedy the deficiencies [in their second cause of action] and to properly plead [same], [they] should be permitted . . . to seek leave to replead that cause of action, upon an evidentiary showing that the cause of action has merit" (Zambito v Ryan, 125 AD2d 462, 463, appeal dismissed 70 NY2d 643 [citations omitted]). Such evidentiary support is required pursuant to CPLR 3211 (e)[FN2] where, as here, the court determines that [*6]the plaintiffs effectively have sought leave to replead in response to a motion to dismiss brought by the defendants pursuant to CPLR 3211 (a) (7) (see Traveler's Ins. Co. v Ferco, Inc., 122 AD2d 718, 719-720 ["when leave is sought to amend pleadings properly dismissed pursuant to CPLR 3211 (a), the court must be satisfied that there are sufficient grounds to support the proposed amended pleadings"]; see also SRW Assocs. v Bellport Beach Property Owners, 129 AD2d 328, 330 ["CPLR 3211 (e) requires the court to focus attention on whether the pleader has a cause of action rather than on whether he has properly stated one"] [internal quotation marks and citations omitted]; Walter & Rosen, Inc. v Pollack, 101 AD2d 734, 735 ["this court has construed CPLR 3211 (e), respecting leave to replead should a complaint be dismissed on motion, to require that the proposed new pleading be supported by evidence . . . ."]; Cushman & Wakefield, Inc. v John David, Inc., 25 AD2d 133, 135 ["The privilege of serving an amended pleading [subsequent to a successful motion to dismiss] must now rely not only on formal corrections to the defective pleading, but also upon an evidentiary demonstration to satisfy a court that the party has a good ground to support his cause of action" [internal quotation marks omitted]). The court is mindful that a dismissal of such claim with prejudice, and without affording the plaintiffs an opportunity to come forward with evidentiary support thereof, could render them bereft of any remedy against the election activities of what they allege is an improper "insider only" Board of Trustees. Accordingly, the court directs plaintiffs, if they so choose, to move for leave to replead their second cause of action, with requisite evidentiary support demonstrating how the membership lists were inadequate or improperly produced, within 60 days of the instant decision and order.
Finally, plaintiffs have failed to state a cause of action in regard to the complaint's third cause of action which seeks an order compelling the production of any Congregation records which reflect the fulfillment of various financial requirements for membership in the Congregation by Congregation members. Pursuant to the Not-for-profit Corporation Law § 621, non-profit corporations are required to keep complete books and records of account and minutes of the proceedings of its members, board and executive committee. Non-profit corporations must also keep a list or record containing the names and addresses of all members at the office of the corporation (N-PCL § 621).[FN3] Members of a non-profit corporation are entitled to inspect "minutes of the proceedings of its members and [the] list or record of members and to make extracts therefrom" upon at least five days written demand and the showing of a proper good faith purpose for doing so (id.).
Plaintiffs have failed to state a cause of action in regard to their claim seeking an order compelling the disclosure of financial records related to the contributions of members to the Congregation. Although plaintiffs appear to seek such records in an attempt to demonstrate that the Congregation and Board of Trustees have failed to comply with their own by-laws in regard to the financial contribution qualifications for membership which are contained therein, plaintiffs have not actually pleaded such a cause of action in their instant complaint. Given that the gravamen of the [*7]plaintiffs' complaint is their claim that the amended membership and voting by-laws themselves, and not the application of same, are improper - a claim which, in any event, has already been dismissed by the court - the court declines to grant broad disclosure into the financial contributions of individual members absent a particularized pleading that the Congregation is not in compliance with said by-laws. Moreover, given the inclusion in the by-laws of provisions by which the Board of Trustees is empowered to make confidential Special Arrangements with congregants in regard to the financial criteria for membership, as well as the wide berth religious institutions are generally afforded in regard to determining the "qualifications of membership" as a "matter of an ecclesiastical nature, relating to the government and discipline of the church" (Matter of Kissel, 103 AD2d at 831), the court finds that the plaintiffs have not sufficiently pleaded their third cause of action which seeks an order from this court directing that the subject financial records be produced to plaintiffs. As a result, plaintiffs' third cause of action must also be dismissed.
The court is cognizant, however, that a dismissal of the plaintiffs' third cause of action with prejudice could potentially render the financial activities of the current Board of Trustees unassailable and deprive plaintiffs of any remedy in regard thereto. Moreover, as with the plaintiffs' second cause of action, the court finds that "because it appears that the plaintiff[s] might be able to remedy the deficiencies [in their third cause of action] and properly plead [same], [they] should be permitted . . . to seek leave to replead that cause of action, upon an evidentiary showing that the cause of action has merit" (Zambito v Ryan, 125 AD2d 462, 463; see also SRW Assocs., 129 AD2d at 330; Traveler's Ins. Co. 122 AD2d at 719-720; Walter & Rosen, Inc., 101 AD2d at 735; Cushman & Wakefield, Inc., 25 AD2d at 135). Accordingly, the court directs plaintiffs, if they so choose, to move for leave to make a particularized pleading directed to the issue of the Board of Trustees' alleged failure to comply with its own by-laws in regard to the financial contribution qualifications for membership contained therein, with the requisite evidentiary showing, within 60 days of the instant decision and order.
In summary, defendants' motion to dismiss is granted, and plaintiff's complaint is dismissed in its entirety. Plaintiffs, however, are granted leave to move to replead their second and third causes of action in accordance with the decision herein.
The foregoing constitutes the decision, order and judgment of the court.

Footnotes
Footnote 1: The court notes that pursuant to Religious Corporation Law (RCL) § 195 "[a]t a corporate meeting of an incorporated church to which this article is applicable the following persons, and no others, shall be qualified voters, to wit: All persons who are then members in good and regular standing of such church by admission into full communion or membership therewith in accordance with the rules and regulations thereof, and of the governing ecclesiastical body, if any, of the denomination or order to which the church belongs, or who have been stated attendants on divine worship in such church and have regularly contributed to the financial support thereof during the year preceding such meeting . . . ."

Footnote 2: CPLR 3211 (e) requires that "leave to plead again [after a dismissal pursuant to CPLR 3211 (a)] shall not be granted unless the court is satisfied that the opposing party has good ground to support his cause of action or defense" and "the court may require the party seeking leave to plead again to submit evidence to justify the granting of such leave."

Footnote 3: The Congregation has been referred to variously in papers submitted to this court as "a non-profit corporation" and "a non-profit religious corporation." The court notes that pursuant to Religious Corporation Law ("RCL") § 2-a, the RCL applies "to every corporation heretofore or hereafter formed under this chapter." In regard to the applicability of the N-PCL and the RCL to religious organizations, RCL § 2-b states that "[t]he not-for-profit corporation law applies to every corporation to which this chapter applies provided that (a) if any provision of the not-for-profit corporation law conflicts with any provision of [the RCL], the provision [of the RCL] shall prevail . . . ." Further, RCL § 2-b (c) enumerates a number of provisions of the not-for-profit law that shall not apply to religious corporations. As N-PCL § 621 is not enumerated therein, and does not appear to otherwise conflict with the provisions of the RCL, the court finds that N-PCL § 612 applies to plaintiffs' third cause of action.