*708 OPINION OF THE COURT
John K. McGuirk, J.
Ordered that the motion by defendants* for summary judgment is granted and the cross motion by plaintiffs for summary judgment is denied.
This case concerns defendants’ desire to secede from the Presbyterian Church (U.S.A.) (hereinafter PCUSA) and, more precisely, ownership of the church’s real property in the Town of Wawayanda. On January 10, 2005, defendants had a congregational meeting and voted unanimously to disassociate themselves from PCUSA.
After correspondence and meetings between the parties, this action ensued. Plaintiffs seek declaratory and injunctive relief concerning the real property and personal property appurtenant thereto (“operational and investment funds, parishioner donations, furniture, ecclesiastical and sacramental items and church records and documents”), an accounting and an order of possession. Following joinder of issue both sides move for summary judgment. Defendants have not counterclaimed for any relief; they simply seek dismissal and cancellation of a notice of pendency.
This case must be decided using neutral principles of law (Jones v Wolf, 443 US 595 [1979]). Since the Court of Appeals ruled in 1984 on the nature of ownership of real property by local churches affiliated with PCUSA on similar facts (see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., 62 NY2d 110 [1984] [hereinafter referred to as the Schenectady case]), this court need only look at factual changes which have occurred since the Court of Appeals decided the Schenectady case and, applying familiar property law principles, determine whether a different result than the one reached by the Court of Appeals in 1984 is warranted.
In the Schenectady case, the First Presbyterian Church of Schenectady (hereinafter First Church) wished to withdraw from the national denomination due to political differences. PCUSA and the Presbytery of Albany refused to accept the vote of the members of First Church to withdraw. First Church commenced an action seeking declaratory and injunctive relief, *709 declaring that it owned its property and enjoining PCUSA and the presbytery from attempting to control it. The Court of Appeals held in the plaintiffs favor. The Court stated that “even though members of a local group belong to a hierarchical church, they may withdraw from the church and claim title to real and personal property, provided that they have not previously ceded the property to the denominational church” (62 NY2d at 120, supra). The Court, relying upon principles from decisions of the United States Supreme Court stated the standard to be applied in these cases:
“In applying neutral principles, the focus is on the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property. The court must determine from them whether there is any basis for a trust or similar restriction in favor of the general church, taking special care to scrutinize the documents in purely secular terms and not to rely on religious precepts in determining whether they indicate that the parties have intended to create a trust or restriction.” (62 NY2d at 122, supra [citations omitted; emphasis added].)
The corporate defendant was incorporated in 1805. The plurality of members elected trustees “to take charge of the estate and property belonging to the said Church & Congregation.” It affiliated with the Presbytery of Hudson River in 1817, placing itself under that presbytery’s care. Defendants own five parcels of real property, the first acquired in 1833 and the last in 1964. In each case, the title holder is “the Trustees of the First Presbyterian Church and Congregation of Ridgebury.” The deeds contain no restriction on title. More specifically, none of the deeds contain language vesting a present or future interest in the favor of the Hudson River Presbytery or PCUSA.
So far, therefore, this case is factually on point with the Schenectady case. Here, as there, the corporate defendant was formed before 1828 and is not subject to section 69 of the Religious Corporations Law which requires that the trustees govern the property in accordance with the constitution of PCUSA. Here, as there, the local congregation holds a fee simple absolute interest in its property without restriction or limitation.
*710 The difference between this case and the Schenectady case is that in the 1980s, PCUSA, in response to decisional law of the United States Supreme Court, amended the Book of Order (i.e., the constitution of PCUSA) to create an express trust provision for congregational property. This provision was first introduced as “Overture A” and the clerk of the General Assembly was directed to send it to the presbyteries for comment. Eventually, it was adopted in 1981. It is contained in the eighth chapter of the Book of Order. It states that all property held by a particular church, whether legal title is lodged in a corporation, a trustee or trustees “is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.)” (Book of Order G-8.0200). It further provides,
“Whenever property of, or held for, a particular church of the Presbyterian Church (U.S.A.) ceases to be used by that church as a particular church of the Presbyterian Church (U.S.A.) in accordance with this Constitution, such property shall be held, used, applied, transferred, or sold as provided by the presbytery” (Book of Order G-8.0300).
Finally, under a provision entitled “Property of Church in Schism,” the Book of Order provides that the relationship to the Presbyterian Church (U.S.A.) can only be severed by action by the presbytery.
The issue in this case, in a nutshell, is whether this action by the General Assembly is enforceable. Inasmuch as chapter 8 of the Book of Order purports to affect title in real property, the court will interpret it in accordance with secular property law in this state, as directed by the Court of Appeals in the Schenectady case.
General Obligations Law § 5-703 provides in relevant part:
“1. An estate or interest in real property ... or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. But this subdivision does not . . . prevent any trust from arising or being extinguished by implication or operation of law, nor any declaration of trust from being proved by a writing subscribed by the person declaring the same.”
*711 It is hornbook property law that only the owner of real property can convey an interest in the property; B cannot create a future interest in A’s property without A’s consent (see generally, Bogert, Trusts and Trustees § 141 et seq. [2d ed rev]).
In the absence of any language in the deed to defendants indicating that title is held subject to the laws or discipline of the national church (compare e.g. In re Church of St. James The Less, 585 Pa 428, 888 A2d 795 [2005]), a change in the laws of the national church does not affect title to the realty held by the local church. Moreover, when defendants acquired the real property Overture A did not exist (see Arkansas Presbytery of Cumberland Presbyt. Church v Hudson, 344 Ark 332, 40 SW3d 301 [2001]; York v First Presbyt. Church of Anna, 130 Ill App 3d 611, 474 NE2d 716 [5th Dist 1984]).
Plaintiffs rely heavily upon decisions involving the Episcopal Church in the United States in which local churches wishing to leave the national denomination also had to leave behind their real property. Upon close evaluation, however, such reliance is misplaced as the cases are distinguishable from the one at bar.
In Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville (250 AD2d 282 [1999]), the Appellate Division, Third Department, was faced with a dispute between the Episcopal Diocese of Albany and Trinity Episcopal Church of Gloversville, New York. The local church wanted to secede from the national denomination and affiliate itself with the Anglican Episcopal Diocese South, Inc. Trinity Episcopal Church had been incorporated “in accordance with the canons and constitution of the Protestant Episcopal Church in the United States of America” (id. at 283) and the certificates of incorporation were drawn pursuant to Religious Corporations Law article 3 (or its predecessor) which confirmed that the local church was an integral part of the Protestant Episcopal Church and the Diocese (250 AD2d at 287). In 1979, the national canons of the Episcopal Church were amended to add the “Dennis Canon” which specifically states that all real and personal property held by or for the benefit of a local parish or congregation is held in trust for the national church and the diocese in which the local church is located. The chancellor to the presiding bishop of the Episcopal Church submitted an affidavit that the “Dennis Canon” was enacted to enunciate existing canonical church law and not to effect a change in the law. The Appellate Division, Third Department, stated:
“In our view, the record supports the conclusion *712 that the ‘Dennis Canon’ amendment expressly codifies a trust relationship which has implicitly existed between the local parishes and their dioceses throughout the history of the Protestant Episcopal Church. By accepting the principles of the Protestant Episcopal Church and the Diocese, defendants were subject to their canons, rules and practices. Defendants, for example, had to obtain approval of the Bishop and the Standing Committee prior to alienating or encumbering real property as required by title I, canon 7, sections 2 and 3 (see, Religious Corporations Law § 12 [2]). These provisions not only indicate that local church property was to be held for the benefit of the Protestant Episcopal Church and its dioceses, but they demonstrate the established customs of said church. . . .
“Likewise, the fact that Trinity Episcopal Church was incorporated pursuant to Religious Corporations Law article 3 confirms that it is an integral member of the Protestant Episcopal Church and that it adopted and is subject to the national church’s constitution and canons.” (250 AD2d at 288-289, supra.)
Similarly, in Rector, Wardens & Vestrymen of Trinity-St. Michael’s Parish, Inc. v Episcopal Church in Diocese of Conn. (224 Conn 797, 620 A2d 1280 [1993]), also relied upon by plaintiffs, the court examined the history of the polity of the Episcopal Church and found that the “Dennis Canon” merely codified an implied trust between the parishes, their diocese and the national church which had always existed.
Here, however, that is not the case. The Episcopal Church has a structure of government which follows, roughly, the models of the Roman Catholic Church and the Eastern Orthodox Churches pursuant to which a diocese is governed by a bishop to whom the parishes in the diocese owe ecclesiastical obedience. The Presbyterian Church, following a Calvinist tradition, has a different system of government. In the Schenectady case, the Court of Appeals specifically rejected the contention that an implied trust could be found in the polity of the Presbyterian Church. Of the three types of property trusts in church property disputes, the Schenectady case found only one arguably implicated: an implied trust for the denominational church. The Court stated that for the doctrine to be applied there must be a manifestation of an intent to do so. It found nothing in the rec *713 ord to indicate that First Church intended to hold its property for the benefit of the denominational church.
Finally, the court acknowledges that there is an argument that by remaining in the national denomination for 25 years after the adoption of Overture A defendants acceded to the express trust placed in the Book of Order. The court finds, however, that mere silence and continuing its membership in the denominational church, absent more, is an insufficient expression of an intent to create a trust.
Restatement (Third) of Trusts § 13 states, “A trust is created only if the settlor properly manifests an intention to create a trust relationship.” Comment a to this section of the Restatement states, “[t]he manifestation of intention requires an external expression of intention as distinguished from undisclosed intention.” “The settlor must manifest with certainty his intent to have a trust and also provide the terms of the trust” (Bogert, Trusts and Trustees § 45, at 483 [2d ed rev]). The only affirmative actions on defendants’ part on this subject since 1981 were their explicit manifestation not to hold their property for the benefit of plaintiffs.
Accordingly, plaintiffs’ cross motion is denied and defendants’ motion is granted.

 “Defendants” in this decision and order refers to all of the defendants listed in the caption except the Reverend Robert W Hoag who has taken no position on these motions. It is unclear, on this record, whether he has answered the complaint.