[895 NYS2d 417]

PRESBYTERY OF HUDSON RIVER OF PRESBYTERIAN CHURCH (U.S.A.) et al., Appellants, v TRUSTEES OF FIRST PRESBYTERIAN CHURCH AND CONGREGATION OF RIDGEBERRY, Also Known as RIDGEBURY CHURCH AND/OR THE CHURCH AT RIDGEBURY, et al., Respondents, et al., Defendant.

Second Department, January 12, 2010

### APPEARANCES OF COUNSEL

*Weil, Gotshal & Manges, LLP,* New York City (*Sarah E. Barrows* of counsel), for appellants.

*Jacobwitz and Gubits, LLP,* Walden (*Donald G. Nichol* of counsel), for respondents.

### OPINION OF THE COURT

DICKERSON, J.

The defendants are, among others, the trustees and members of the First Presbyterian Church and the Congregation of Ridgeberry, also known as Ridgebury Church and/or the Church at Ridgebury (hereinafter collectively Ridgebury Church), a local congregation, as well as Ridgebury Church itself. Ridgebury Church was affiliated with the plaintiff Presbytery of Hudson River of Presbyterian Church (U.S.A.) (hereinafter Presbytery of Hudson River) and the national Presbyterian Church (U.S.A.) (hereinafter PCUSA) or their predecessors, from 1817 to early 2005. In 2005 Ridgebury Church seceded from PCUSA and attempted to take with it the real and personal property allegedly owned by it.

The plaintiffs Presbytery of Hudson River and Reverend Richard M. Spierling commenced the instant action, inter alia, for a declaratory judgment seeking to establish that Ridgebury Church held the subject property in trust for Presbytery of Hudson River and the PCUSA. The defendants moved for summary judgment, inter alia, declaring that Ridgebury Church owned the subject property. The plaintiffs cross-moved for summary judgment, seeking, inter alia, a judgment declaring that the property was subject to an express or implied trust.

History of Ridgebury Church

Ridgebury Church was organized in 1792 and incorporated in 1805. The certificate of incorporation stated that all property of the church was under the "charge" of the trustees of Ridgebury Church.

At a session meeting in 1817 Ridgebury Church affiliated itself with the Presbytery of Hudson, a predecessor of the Presbytery of Hudson River. Ridgebury Church passed the following two resolutions at the meeting:

> "1. Resolved that we adopt the 'Confession of Faith' and the 'Form of Government' of the Presbyterian Church of the United States of America.

> "2. That we put ourselves under the care, and connect ourselves with the Presbytery of Hudson."

In 1958 the Presbyterian Church in the United States of America (which is not the same entity as the subsequently-formed PCUSA), of which the Presbytery of Hudson was a member, merged with the Presbyterian Church of North America to form the United Presbyterian Church in the United States of America (hereinafter UPCUSA), a predecessor of the PCUSA. In 1961 the Presbyteries of Hudson, North River, and Westchester merged to form the Presbytery of Hudson River.

The Subject Real Property

By five separate deeds dated between April 1, 1833 and June 16, 1964, Ridgebury Church and/or its trustees acquired title to five separate parcels of real property.

In 1979 Ridgebury Church submitted an application to the Presbytery of Hudson River requesting permission to sell certain property that had been devised to it in a will, as the property was not needed by Ridgebury Church. Later, Ridgebury Church sought permission from the Presbytery of Hudson River to reduce the minimum sale price of the property.

The United States Supreme Court Ruling

On July 2, 1979 the United States Supreme Court decided *Jones v Wolf* (443 US 595, 604 [1979]), holding, inter alia, "that a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." In discussing the benefits of a "neutral principles of law" approach, the United States Supreme Court observed that such an approach

> "is completely secular in operation, and yet flexible

enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general-flexibility in ordering private rights and obligations to reflect the intentions of the parties. Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy. In this manner, a religious organization can ensure that a dispute over the ownership of church property will be resolved in accord with the desires of the members." (*Id.* at 603-604.)

UPCUSA's "Overture A"

In response to the decision in *Jones v Wolf*, in 1980 the 192nd General Assembly of UPCUSA directed its clerk to send "Overture A" to the various presbyteries, including the Presbytery of Hudson River, to elicit their input as to whether the UPCUSA Constitution should be amended to add a property trust clause. At a meeting on March 10, 1981 the Presbytery of Hudson River recommended that Overture A be approved so as to explicitly state in the UPCUSA Constitution that all church property was held in trust for the denomination. The pastor of Ridgebury Church, Reverend William Wildeman, was in attendance at that meeting. At the 193rd General Assembly of UPCUSA, Overture A was adopted with a vote of 146 presbyteries in favor and four presbyteries opposed.

Formation of PCUSA and Ridgebury Church's Participation

In 1983, UPCUSA merged with the Presbyterian Church in the United States to form PCUSA. Ridgebury Church was affiliated with the newly-formed PCUSA. Ridgebury Church participated in the proceedings of the Presbytery of Hudson River as demonstrated by the Presbytery meeting attendance records. Ridgebury Church further abided by the PCUSA Constitution as demonstrated, inter alia, by its actions in seeking the approval of the Presbytery of Hudson River for pastoral calls and

contracts for a minister and submitting to the Presbytery of Hudson River a list of church officials and session records until January 2005.

## The Book of Order and Church Property

The PCUSA Constitution consists of two parts, the Book of Confessions and the Book of Order. The Book of Confessions contains historical statements setting forth the beliefs of PCUSA. The Book of Order sets forth PCUSA's "Form of Government, Directory for Worship, and Rules of Discipline."[1]

Contained within chapter VIII, sections (2) and (3) of the Form of Goverment part of the Book of Order (G-8.0201, G-8.0301), the property trust provisions state:

> "G-8.0201 Property Is Held in Trust. All property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.), whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.) . . .

> "G-8.0301 Property Used Contrary to Constitution. Whenever property of, or held for, a particular church of the Presbyterian Church (U.S.A.) ceases to be used by that church as a particular church of the Presbyterian Church (U.S.A.) in accordance with the Constitution, such property shall be held, used, applied, transferred, or sold as provided by the presbytery."

Additional provisions of the Book of Order discuss the control and possession of church property in general and the relationship between PCUSA and local churches such as Ridgebury Church to church property. For example, Form of Government chapter VIII, G-8.0501, entitled "Selling or Encumbering Church Property" indicates, "[a] particular church shall not sell, mortgage, or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance

---

1. Constitution of the Presbyterian Church (U.S.A.), http://www.pcusa.org/constitutionalservices/constitution.htm (Presbyterian Church [U.S.A.] [accessed Dec. 11, 2009]).

or condition without the written permission of the presbytery transmitted through the session of the particular church." Additionally, chapter VIII, G-8.0502 provides, "[a] particular church shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the particular church."

Chapter VIII, G-8.0601, entitled "Property of Church in Schism," further indicates:

> "The relationship to the Presbyterian Church (U.S.A.) of a particular church can be severed only by constitutional action on the part of the presbytery. (G-11.0103i[.]) If there is a schism within the membership of a particular church and the presbytery is unable to effect a reconciliation or a division into separate churches within the Presbyterian Church (U.S.A.), the presbytery shall determine if one of the factions is entitled to the property because it is identified by the presbytery as the true church within the Presbyterian Church (U.S.A.). This determination does not depend upon which faction received the majority vote within the particular church at the time of the schism."

The Book of Order provides an exception under which a particular church could be exempt from the above provisions. Chapter VIII, G-8.0701, states:

> "The provisions of this chapter shall apply to all particular churches of the Presbyterian Church (U.S.A.) except that any church which was not subject to a similar provision of the Constitution of the church of which it was a part, prior to the reunion of the Presbyterian Church in the United States and The United Presbyterian Church in the United States of America to form the Presbyterian Church (U.S.A.), shall be excused from that provision of this chapter if the congregation shall, within a period of eight years following the establishment of the Presbyterian Church (U.S.A.), vote to be exempt from such provision in a regularly called meeting and shall thereafter notify the presbytery of which it is a constituent church of such vote. The particular church voting to be so exempt shall hold title to its property and exercise its privileges of

incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the Presbyterian Church (U.S.A.). This paragraph may not be amended."

## Ridgebury Church's Secession

By undated correspondence, Ridgebury Church informed the Presbytery of Hudson River that it was disassociating itself from PCUSA for "reasons . . . too numerous to be listed." Ridgebury Church further stated that

"[w]e leave with only that which is ours—what we have bought and paid for without your help. We do not ask for an accounting or that you return to us what we have given in support of the denomination, but rather will rely on our LORD to supply all our needs according to His riches in Christ Jesus. We have determined that our property, real and personal, belongs to the First Presbyterian Church and Congregation in Ridgebury and will continue to be used for the work which Christ Jesus has appointed for us. All sources that we have reviewed indicates that all right, title and interest belongs to us—the Scriptures, which are the only rule for faith and practice, the Confessions, our Certificate of Incorporation, and the Laws of the State of New York. We find no trust, express or implied. Such a trust would be contrary to the Scriptures and Confessions. We have reviewed reports of title and have obtained a legal opinion that we are vested with title. We have arranged for the defense of our title and a counterclaim for damages should that prove necessary, though we pray that such will not be necessary, reminding you of the injunction in 1 Cor 6."

## The Property Dispute

The Presbytery of Hudson River responded to Ridgebury Church's secession letter by correspondence dated January 27, 2005, indicating that

"[t]he Book of Order of our denomination is very clear about the property of a particular church that ceases to be part of the Presbyterian Church (U.S.A.), stating '. . . such property shall be held, used, applied, transferred, or sold by the presbytery.' (Book of Order, Form of Government, Chapter

VIII, section 3). That being the case, I remind you that the session of your church, individually and collectively, is responsible for preserving the church's assets, making no unusual transfers or expenditures, until the presbytery's control of the assets is actualized either by the session's agreement or by court decision."

Ridgebury Church responded to the correspondence from the Presbytery of Hudson River in letters dated February 15, 2005, and March 29, 2005, respectively. Ridgebury Church stated that it owned the subject property pursuant to Scriptures and the laws of New York since its certificate of incorporation placed the property under the care and control of the trustees of the Church and that the Church never conveyed the property to the PCUSA.

Additionally, Ridgebury Church filed an amended certificate of incorporation on April 14, 2005 changing its name to "Ridgebury Church and/or The Church at Ridgebury" and stating, inter alia, that "[a]ny claim to ownership of the property, real or personal, of the Church not expressly granted by legal action of the Trustees and approved by the Courts of the State of New York with respect to real property, is hereby declared unscriptural and contrary to the true faith and thus null, void, and without effect."

The Presbytery of Hudson River held a hearing on April 21, 2005 before a Special Committee appointed by the Presbytery to inquire pursuant to G-11.0103 (a) of the Book of Order whether Ridgebury Church was "unable or unwilling to manage wisely the affairs of [that] Church." The Special Committee found, upon the advice of its legal counsel, that Ridgebury Church ratified and approved the property trust clause by its continued participation in the Presbytery of Hudson River and PCUSA following adoption of the property trust clause and, hence, was bound by the property trust clause so as to preclude Ridgebury Church from retaining the church property. The Special Committee further found that Ridgebury Church was unwilling or unable to manage wisely the affairs of the Church and recommended that the Presbytery of Hudson River appoint an administrative commission to assume jurisdiction of Ridgebury Church and that the seceding members of Ridgebury Church be denied access to the Church. The Presbytery of Hudson River adopted the findings and recommendations of the Special Committee and issued a certified resolution in accordance therewith on May 21, 2005.

## The Instant Action

The plaintiffs commenced this action, inter alia, for a judgment declaring that all property, real and personal, now held by the Ridgebury Church was held in trust for the Presbytery of Hudson River. The complaint also alleged that Ridgebury Church was bound by the express trust provision contained within the Book of Order, especially in light of the fact that the Church was aware of and participated in the proceedings leading to the adoption of the express trust provision and continued to fully participate as members of the Presbytery through 2004 after the adoption of the trust provision. The complaint further alleged that, pursuant to the express trust provision, the subject property reverted to the Presbytery of Hudson River upon the secession of Ridgebury Church. The plaintiffs claimed that the Presbytery of Hudson River was entitled to possession of the property to be held in trust for the PCUSA.

## Moving Defendants' Motion for Summary Judgment

The defendants, with the exception of the defendant Reverend Robert W. Hoag (hereinafter the defendants), moved for summary judgment declaring that Ridgebury Church owned the subject property. The defendants argued that the trust provision in the Book of Order was expressly invalidated by the Scripture, the Book of Confessions, and the Word of God. The defendants claimed than an "express property guaranty" contained within the "Westminster Confession of Faith" of 1646, which they contended read "[n]or doth their communion one with another as saints take away or infringe the title or property which each man hath in his own goods and possessions," precluded the trust provision contained in the Book of Order. They further argued that a title search revealed that Ridgebury Church was the record owner of the real property at issue and that no deed was located showing that the property was held in trust or in any manner conveyed to the Presbytery of Hudson River. The defendants also argued that the complaint failed to allege that Ridgebury Church voted on or expressly consented to any trust clause in the Book of Order. In addition, they argued that the mere fact that Ridgebury Church remained in communion with and financially supported the Presbytery of Hudson River after the adoption of the trust provision did not infringe on the Church's ownership rights with respect to the subject property.

In further support of their motion for summary judgment, the defendants submitted as exhibits: (1) the 1805 certificate of incorporation and 2005 amended certificate of incorporation; (2)

articles regarding the history and structure of the Presbyterian Church; (3) the minutes from the January 10, 2005 congregational meeting at which Ridgebury Church voted to disassociate itself from the Presbytery of Hudson River and PCUSA; (4) correspondence between Ridgebury Church and the Presbytery of Hudson River concerning the Church's intended secession from the Presbytery of Hudson River and PCUSA; (5) a title search showing Ridgebury Church to be record owner of the subject properties; and (6) a chapter from the Rules of Discipline to demonstrate that the Presbytery of Hudson River did not have authority over Ridgebury Church as the Presbytery of Hudson River did not commence a case against Ridgebury Church in the manner prescribed by the Rules of Discipline, the third section of the Book of Order.

## The Plaintiffs' Cross Motion for Summary Judgment

The plaintiffs cross-moved for summary judgment, arguing, inter alia, that the defendants were bound by the express trust provision in the Book of Order, which merely codified an implied trust that had historically existed in Presbyterian doctrine. Hence, the plaintiffs argued, under a "neutral principles" analysis, the express and implied trust entitled the Presbytery of Hudson River to the property at issue. In support of the cross motion and in opposition to the defendants' motion, the plaintiffs submitted as exhibits: (1) the attendance records for the Presbytery of Hudson River meetings from 1982 through 2004 to show that Ridgebury Church participated in the proceedings of the Presbytery of Hudson River after the adoption of the trust provision; (2) various documents to show that the Presbytery of Hudson River had to approve acts intended to be taken by Ridgebury Church such as appointing moderators or ministers or issuing pastoral calls and to show that Ridgebury Church submitted for review membership lists and session records to the Presbytery of Hudson River; (3) the report and certified resolution of the Special Committee appointed to ascertain whether Ridgebury Church was unable or unwilling to manage wisely the affairs of the Church; (4) the express trust provision contained in the Book of Order; (5) an extract from the minutes of the 192nd General Assembly meeting regarding Overture A, the proposed property trust provision; (6) an extract from the minutes of the meeting held by the Presbytery of Hudson River concerning Overture A, showing its recommendation in favor thereof; (7) attendance records at the 193rd General Assembly meeting during which Overture A was passed to show

that the Reverend of Ridgebury Church, Reverend William Wildeman, was present at the time; (8) an extract from the minutes of the 193rd General Assembly meeting showing the adoption of Overture A; (9) an application submitted by Ridgebury Church to the Presbytery of Hudson River for approval to sell land devised to Ridgebury Church by will; and (10) a title report showing that Ridgebury Church was listed as the record owner of the subject properties.

The plaintiffs also submitted an affidavit sworn to by Reverend Mark Tammen, J.D., the Director of Constitutional Services, who attested that the property trust doctrine existed throughout the history of the Presbyterian Church. Reverend Tammen stated:

> "From the days of their founders in Europe to the present, Presbyterian and Reformed theologians have emphasized the organic unity of the church. This unity is concretely manifested in the trust doctrine which has existed from the inception of the Presbyterian Church in the United States and has applied to all branches of the Presbyterian Church . . . The trust doctrine has been confirmed and acted upon by numerous actions of the General Assembly in governing the Presbyteries."

Annexed to Reverend Tammen's affidavit was the 1979 Report of the Permanent Committee on Conservation of Property of UPCUSA. The 1979 report discussed the need to enact an express trust provision to codify the implied trust that had historically existed.

Also annexed to Tammen's affidavit was a 1968 report of the Permanent Committee on the Conservation of Property to the General Assembly. The 1968 report recommended that the General Assembly

> "[a]ffirm its continued adherence to the principle that all property owned by a local church of The United Presbyterian Church in the United States of America, whether used in programs of the local church or of a higher judicatory, or held for investment, is held in trust for The United Presbyterian Church in the United States of America."

Also annexed to the plaintiffs' cross motion was the affidavit of William E. Chapman, a purported expert on Presbyterian structure and polity. Chapman stated that

> "his historical studies of the records of national Presbyterian Church denominational bodies which preceded PCUSA and the actions of its/their General Assemblies and the constituent presbyteries, confirm that by 1817 and at all times thereafter presbyterian doctrine provided that the property of presbyterian churches was held in trust for the national denomination."

Defendants' Response

In opposition to the plaintiffs' cross motion and in further support of their motion, the defendants argued that Ridgebury Church's association with the Presbytery of Hudson River did not divest the Church of title to its property and reiterated that the Westminster Confession of Faith of 1646 contained a "property guaranty provision" that precluded the trust provision contained in the Book of Order. According to the defendants, the Westminster Confession of Faith of 1646 established that "the association (communion) with the denomination also known as the 'communion of saints,' does not take away or infringe the title or property which Ridgebury Church (or anyone) has in its goods and possessions." The defendants submitted Form of Government chapter II of the Book of Order, entitled "The Church and Its Confessions," which did not contain any language constituting a property guaranty provision. They did not submit a copy of the Westminster Confession of Faith of 1646.

The Judgment Appealed from and the Underlying Order

In an order dated August 16, 2006, the Supreme Court granted the defendants' motion for summary judgment and denied the plaintiffs' cross motion for summary judgment (13 Misc 3d 707 [2006]). In the judgment appealed from, entered December 6, 2006, upon the order, the same court declared

> "that all property, real and personal, now held by The Church at Ridgebury, f/k/a the First Presbyterian Church and Congregation of Ridgebury (Ridgebury) or Ridgebury Presbyterian Church, is the property of said Church, free and clear of any interest therein on the part of the Plaintiffs herein, the Presbytery of Hudson River and/or the Presbyterian Church (USA)."

We now reverse the judgment, deny the defendants' motion for summary judgment, and grant the plaintiffs' cross motion for summary judgment.

## Discussion
### The Defendants' Motion For Summary Judgment

■ The defendants failed to make a prima facie showing of entitlement to judgment as a matter of law by demonstrating that they owned the subject property. Accordingly, the Supreme Court should have denied their motion for summary judgment in its entirety.

The defendants failed to present any evidence to support their contention that they owned the personal property at issue.

With respect to the real property, the defendants submitted the deeds conveying the subject real property to them, which did not contain any express reversionary or trust provisions. They also submitted a title search listing Ridgebury Church as the record owners of the subject real property. However, the defendants acknowledge that the Book of Order, a component of the Constitution of PCUSA, contains language specifying that all property held by a particular church is held in trust for the national denomination. The neutral principles approach requires the courts to "look to 'the constitution of the general church concerning the ownership and control of church property' " (*Episcopal Diocese of Rochester v Harnish*, 11 NY3d 340, 351 [2008], quoting *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110, 122 [1984], *cert denied* 469 US 1037 [1984]). The express trust provision contained in the Book of Order defeats the defendants' efforts to demonstrate their entitlement to summary judgment because the enactment of such a trust provision is one way in which the national denomination or Presbytery may ensure that church property is retained by the faction loyal to the national denomination and Presbytery upon secession of any particular church (*see Jones v Wolf*, 443 US 595 [1979]).

In support of their motion, the defendants also proffered a copy of the 1805 certificate of incorporation which stated that the trustees of Ridgebury Church were "to take the charge of the estate and property belonging to said Church and Congregation." The defendants insist that this language is further indication that the property was intended to belong to the Church and at all times was believed by Ridgebury Church to belong to it. However, the certificate only states that the trustees were to take charge of the property. It does not state that the property was "owned" by Ridgebury Church. As the property admittedly was in Ridgebury Church's possession for its use, this language alone is insufficient to impute ownership rights to Ridgebury

Church. The certificate of incorporation is in fact silent as to ownership of the property, which does not support the defendants' entitlement to summary judgment.

The defendants further submitted the amended certificate of incorporation, which was filed in April 2005 after Ridgebury Church determined to secede from the Presbytery and PCUSA. Although the amended certificate of incorporation does contain explicit language of ownership by Ridgebury Church, it is clear on this record that this language was inserted to bolster the Church's position in contemplation of the controversy at issue here. Thus, the self-serving nature of the amended certificate of incorporation renders it of little significance in the determination of the instant dispute (*cf. Leeber v Ward*, 55 AD3d 563 [2008]).

Lastly, the defendants argue, for the first time on appeal, that Religious Corporations Law § 69 (3) does not apply to them, as the Church was incorporated prior to 1828. Religious Corporations Law § 69 (3) controls property disputes involving the Presbyterian Church and requires that trustees of the local churches govern the property in their possession in accordance with the Constitution of PCUSA. The Constitution of PCUSA, particularly the Book of Order, expressly states that all church property held by local churches is held in trust for the benefit of PCUSA. Thus, if Religious Corporations Law § 69 (3) applied here, pursuant to that section, the trustees of Ridgebury Church would have merely held the church property at issue in trust for PCUSA pursuant to the dictates of the Book of Order. Religious Corporations Law § 69 (3) is "not applicable to churches incorporated prior to 1828 if the statute is inconsistent with the law as it existed at the time of incorporation, unless the church reincorporates after 1828 or the trustees determine by resolution that the provisions of the Religious Corporations Law shall apply" (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d at 122-123; *see* Religious Corporations Law § 24). The defendants failed to present any proof that they fell under the exception codified by Religious Corporations Law § 24 by demonstrating that the statute was inconsistent with the law as it existed in 1805, the date of Ridgebury Church's incorporation. In this regard, the defendants say only that Ridgebury Church was incorporated prior to 1828, but, by its terms, the so-called exception created by Religious Corporations Law § 24 requires, in addition to this, a showing that "the statute is inconsistent with the law as it existed at the

time of incorporation, unless the church reincorporates after 1828 or the trustees determine by resolution that the provisions of the Religious Corporations Law shall apply" (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d at 122-123). The defendants have not demonstrated that this exception applies. In any event, even if the defendants had established that Religious Corporations Law § 69 (3) was inapplicable, this showing would be insufficient to establish their prima facie entitlement to judgment as a matter of law (*cf. Episcopal Diocese of Rochester v Harnish,* 11 NY3d at 351).

Hence, in light of the foregoing, although the defendants presented some proof of ownership of the real property in the form of the deeds conveying the subject property and the title search record, they have not satisfied their initial burden on summary judgment of eliminating all issues of fact as to their ownership of the subject property. Because the defendants failed to make a prima facie showing of entitlement to judgment as a matter of law, the burden never shifted to the plaintiffs to raise a triable issue of fact (*see Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]). Accordingly, the Supreme Court should have denied the defendants' motion for summary judgment.

## Plaintiffs' Cross Motion For Summary Judgment

■ "Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine ownership in the event of a schism or doctrinal controversy" (*Jones v Wolf,* 443 US at 603). On their cross motion for summary judgment, the plaintiffs tendered sufficient evidence to establish their prima facie entitlement to judgment as a matter of law, particularly the express trust provision contained in the Book of Order. Under the neutral principles approach, this constituted proof that the church property was held in trust for the national denomination and must revert to it upon the secession of Ridgebury Church. In opposition, the defendants failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted the plaintiffs' cross motion for summary judgment.

## Determining Ownership of Church Property

Pursuant to *Jones v Wolf* (443 US at 606):

> "Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the

parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate [property] charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form."

As the Court of Appeals has noted:

"Application of the neutral principles doctrine requires the court to focus 'on the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property. The court must determine from them whether there is any basis for a trust or similar restriction in favor of the general church, taking special care to scrutinize the documents in purely secular terms and not to rely on religious precepts in determining whether they indicate that the parties have intended to create a trust or restriction' " (*Episcopal Diocese of Rochester v Harnish,* 11 NY3d at 350-351, quoting *First Presbyt. Church,* 62 NY2d at 122 [citations omitted]).

The Trust Provision

The plaintiffs tendered a copy of the trust provision contained in the Book of Order, which expressly states that all property held by a particular church is held in trust for the use and benefit of PCUSA. They also proffered minutes of the Presbytery of Hudson River's meeting in 1981 which showed that Ridgebury Church's reverend was in attendance when Overture A (the proposed express trust provision) was discussed and that the Presbytery of Hudson River recommended approval of Overture A.

Thus, the plaintiffs have presented proof that PCUSA employed the means discussed by the United States Supreme Court in *Jones v Wolf* (443 US 595 [1979]) to ensure that church

property was held in trust on its behalf by adding an express trust provision to its Constitution. Contrary to the defendants' suggestion, nowhere does the United States Supreme Court indicate that the deeds to the property were required to be amended in order to reflect a trust provision. On the contrary, the Court specifically stated that adding a trust provision to the denomination's constitution was an alternative to amending deeds or corporate charters.

As the Court of Appeals did in *Episcopal Diocese of Rochester v Harnish* (11 NY3d at 351), we find the factor of "the constitution of the general church concerning the ownership and control of church property" to be dispositive here, even if no provision of the Religious Corporations Law conclusively established a trust in favor of the Presbytery of Hudson River or PCUSA and despite the fact that there is nothing in the deeds that establishes an express trust in favor of the Presbytery of Hudson River or PCUSA.

The Book of Order

The plaintiffs presented several additional provisions of the Book of Order that indicated that local churches such as Ridgebury Church were not authorized to act with respect to the property in their possession in whatever manner they saw fit. Sections G-8.0501 and G-8.0502 required local churches to obtain the permission of the Presbytery of Hudson River prior to selling, encumbering or leasing any church property. Furthermore, section G-8.0601 placed the power to determine which faction would retain church property in the event of a schism in the membership of a particular church in the hands of the Presbytery of Hudson River. These additional provisions are further proof that the PCUSA's Constitution expressly provided that all church property in the possession of local churches remained under the ultimate care and control of the Presbytery of Hudson River.[2]

The Historical Implied Trust

■ The plaintiffs further presented proof in the form of affidavits by the Director of Constitutional Services and an expert

---

**2.** Although this issue was not briefed on appeal or argued before the Supreme Court, it should be noted that the plaintiffs presented a provision in the Book of Order that set out the necessary requirements to allow a particular church to retain full ownership rights to the exclusion of the PCUSA in Form of Government chapter VIII, G-8.0701. The defendants did not argue or show that Ridgebury Church met the criteria to be exempted from the express property trust provision in the Book of Order and that it took the necessary steps to effectuate the exemption.

on Presbyterian structure and polity that an historical implied trust had existed prior to the enactment of the express trust provision. These affidavits state that the implied trust existed in 1817 at the time that Ridgebury Church became affiliated with the Presbytery of Hudson River's predecessor. Thus, these affidavits support the plaintiffs' contention that the express trust provision codified a trust relationship that had historically existed between the local churches and the PCUSA and its predecessors (*see Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282, 288 [1999]). These affidavits were accompanied by documentation showing that the concept that all property of particular churches was held in trust for the national denomination was recognized at least as early as 1817. In this regard, the contrast between the instant action and *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.* (62 NY2d 110 [1984]), the case upon which the defendants rely, is significant.

In *First Presbyterian Church of Schenectady,* a dispute arose between the local church, First Presbyterian Church of Schenectady (hereinafter First Presbyterian), and the national denomination, then UPCUSA, and First Presbyterian withdrew from the denomination (*id.* at 113). First Presbyterian commenced an action seeking a declaration of its independent status and a permanent injunction preventing UPCUSA from interfering with its use and enjoyment of church property (*id.* at 114-115). The issue before the Court of Appeals was "whether the court may resolve the dispute between the parties as it would any other or must, consistent with the prohibition against church/State entanglement contained in the First Amendment to the United States Constitution, defer to the determination of the denominational church" (*id.* at 113).

Similar to the instant action, First Presbyterian held deeds to the subject property which did not contain any express language establishing a trust or a reversion to UPCUSA, and the certificate of incorporation was silent on the question of how the property was to be owned (*id.* at 122). Unlike the instant action, however, UPCUSA's Constitution contained no provision creating an express trust in favor of UPCUSA, and there was some indication that the Religious Corporations Law did not apply to the pre-1828 incorporated church as the law in 1803, the date of incorporation of First Presbyterian, reportedly was inconsistent with Religious Corporations Law § 69 (*id.* at 122-123). The Court of Appeals found that First Presbyterian "had

no notice or knowledge that the Presbytery or UPCUSA claimed that an implied trust existed prior to the dispute" (*id.* at 125).

The evidence presented by the plaintiffs here, however, established that Ridgebury Church had notice and knowledge that PCUSA claimed that a trust existed prior to this dispute based on the presence of Ridgebury Church's reverend at the very meeting in which codifying the implied trust by enacting an express trust provision was discussed. Whether the reverend was considered a member of the congregation, as disputed by the defendants, is irrelevant.

Following the Governance of PCUSA

■ The plaintiffs also tendered proof of resolutions passed by Ridgebury Church to follow the governance of PCUSA and to submit to its care and control. In this vein, the plaintiffs presented proof that, in 1979, Ridgebury Church sought the permission of the Presbytery of Hudson River prior to selling property that was devised to Ridgebury Church in a will. The will purportedly transferred the property to Ridgebury Church and vested it with legal title to the property. Nevertheless, the Church sought permission from the Presbytery of Hudson River before selling it. This supports the claim that Ridgebury Church was aware of and adhering to the concept that property in its possession and control was under the ultimate control of the Presbytery of Hudson River and, as such, Ridgebury Church was required to, and did, seek the consent of the Presbytery of Hudson River prior to the sale or transfer of the property. Significantly, Ridgebury Church sought permission from the Presbytery of Hudson River to sell the property notwithstanding that Ridgebury Church held legal title to the property pursuant to the provisions of the will (*see e.g. Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d at 288).

Moreover, unlike the *First Presbyterian Church of Schenectady* case, the proof that Ridgebury Church sought and obtained consent from the Presbytery of Hudson River to sell property devised specifically to Ridgebury Church is an action "from which an intent to create a trust may be implied" (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d at 125). By seeking permission from the Presbytery of Hudson River to sell property devised to it, Ridgebury Church showed that it intended to create a trust or believed that a trust was already in existence such that the property to which it reportedly held legal title was properly under the

control, and held for the benefit, of the Presbytery of Hudson River or PCUSA.

## Adhering To The Constitution

The plaintiffs also presented proof that Ridgebury Church conducted its affairs in accordance with the PCUSA's Constitution and was an active member of the polity. The defendants admit that Ridgebury Church adhered to the PCUSA's Constitution from the time of their association with it in 1817 through 2004. Although the mere fact that Ridgebury Church associated itself with PCUSA and the Presbytery of Hudson River does not alone suffice to support a finding that an implied trust was created here, the plaintiffs' showing on this record that throughout Ridgebury Church's existence it conducted its affairs in accordance with the PCUSA's Constitution and was an integral member of its polity lends additional support to the finding that an implied trust was created by Ridgebury Church (*see Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville*, 250 AD2d 282 [1999]; *see also North Cent. N.Y. Annual Conference v Felker*, 28 AD3d 1130 [2006]).

## The Westminster Confession of Faith of 1646

The defendants assert that the express trust provision contained in the Book of Order is invalidated by the "property guaranty provision" contained in the "Westminster Confession" of 1646, which they claim establishes "that the association (communion) with the denomination also known as the 'communion of saints,' does not take away or infringe the title or property which Ridgebury Church (or anyone) has in its goods and possessions." However, the defendants failed to provide a copy of this alleged "property guaranty provision" in the Westminster Confession of Faith of 1646. Instead, they submitted a copy of Form of Government chapter II of the Book of Order entitled "The Church and Its Confessions" that does not in any manner invalidate the express trust provision or indicate that all property in possession of local churches is owned by the local churches and not by the Presbytery or the national denomination. In the absence of any evidence to establish the existence of a so-called "property guaranty provision," or that the Westminster Confession of Faith of 1646 superseded the Book of Order, a component of the Constitution of PCUSA, the defendants' mere insistence that the express trust provision was invalid under the Westminster Confession of Faith of 1646 is insufficient to create a triable issue of fact.

The defendants also submitted an article discussing the decision by two other Presbyterian sects, namely the Presbyterian

Church in America (PCA) and the Evangelical Presbyterian Church (EPC), to write into their constitutions statements refuting denominational property trust clauses, as well as an opinion piece in the "letters to the editor" section of a religious publication which was of the view that property trust clauses are not essential to the doctrine of Presbyterian connectionalism. These articles are insufficient to create triable issues of fact. The first article discusses sects other than PCUSA and, hence, is inapplicable to the current dispute. The second article is simply an opinion piece and does not in any manner show that the express trust provision at issue here is invalid.

Hierarchical Forms Of Government

In opposition to the plaintiffs' cross motion, the defendants also argue that PCUSA is not hierarchical and therefore cases involving religions employing a hierarchical form of government, such as the Episcopal Church, are not controlling (*see e.g. Episcopal Diocese of Rochester v Harnish,* 11 NY3d 340 [2008]; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282 [1999]). However, in one of the cases on which the defendants rely, *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.* (62 NY2d 110, 114 [1984]), the Court of Appeals expressly stated that UPCUSA, the predecessor of PCUSA, "exhibits a hierarchical or connectional form of church government, as differentiated from a congregational form" (*see also Jones v Wolf,* 443 US 595 [1979]). Ultimately, we find that the defendants, in opposition to the plaintiffs' motion, failed to demonstrate that PCUSA is not hierarchical, or that cases involving hierarchical religious organizations do not apply here.

Conclusion

For the foregoing reasons, the judgment is reversed, on the law, the defendants' motion for summary judgment is denied, the plaintiffs' cross motion for summary judgment is granted, it is declared that all property, real and personal, now held by Ridgebury Church is held by the Presbytery of Hudson River in trust for PCUSA, and the order dated August 16, 2006, is modified accordingly.

FISHER, J.P., DILLON and COVELLO, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the motion of the defendants other than Robert W. Hoag for summary judgment is denied, the plaintiffs' cross motion for summary judgment is granted, it is declared that all property, real and personal, now held by the First Presbyterian Church

and Congregation of Ridgeberry, also known as Ridgebury Church and/or the Church at Ridgebury, is held by the Presbytery of Hudson River of Presbyterian Church (U.S.A.) in trust for the Presbyterian Church (U.S.A.), and the order dated August 16, 2006, is modified accordingly.

---

Motion by the appellants to strike stated portions of the respondents' brief on an appeal from a judgment of the Supreme Court, Orange County, entered December 6, 2006, on the ground that the respondents refer to matter dehors the record. By decision and order of this Court dated February 13, 2009 (2009 NY Slip Op 63529[U]), the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion, the papers filed in opposition and relation thereto, and upon the argument of the appeal, it is

Ordered that those branches of the motion which were to strike from the respondents' answering brief any and all references to and arguments based upon (1) the Scots Confession; (2) those stated portions of the Book of Confessions and Book of Order not contained within the record, including sections 6.173 through 6.175 of the Book of Confessions, sections G-1.0307, G-2.0200, and G-9.0103 of the Book of Order, and section 3.20 of the Scots Confession; and (3) the "secret denominational legal directives," are granted, those references are stricken, and they have not been considered in the determination of the appeal; and it is further,

Ordered that the motion is otherwise denied. FISHER, J.P., DILLON, COVELLO and DICKERSON, JJ., concur.