[906 NYS2d 740]

WILLIAM S. CRAINE, as President of Chenango County Chapter, NYSARC, Inc., Plaintiff, v NYSARC, INC., Defendant.

Supreme Court, Chenango County, August 19, 2010

560

APPEARANCES OF COUNSEL

*Rupp, Baase, Pfalzgraf, Cunningham & Coppola, LLC*, Buffalo (*Lisa A. Coppola* of counsel), for plaintiff. *Nixon Peabody, LLP*, Albany (*Daniel J. Hurteau* of counsel), for defendant.

## OPINION OF THE COURT

PHILLIP R. RUMSEY, J.

This action arises from a dispute regarding the legal relationship between defendant NYSARC, Inc., a New York not-for-profit corporation, and its local chapters. William S. Craine, the nominal plaintiff, is president of Chenango County Chapter, NYSARC, Inc. (herein plaintiff), which is a local chapter of defendant. He commenced this action on plaintiff's behalf, asserting that plaintiff is an unincorporated association with a legal existence independent of defendant and seeking a declaration that it owns the assets in its possession. Defendant counterclaimed, contending that plaintiff is an operational unit of defendant with no separate legal identity and that the disputed assets are owned by defendant. Both parties now move for summary judgment and defendant additionally seeks dismissal of the complaint on the basis that plaintiff lacks standing to sue.

Background

Plaintiff traces its origins to a group of parents who first met in March and April of 1963 with the aim of providing community-based services for developmentally disabled children (affidavit of Sally Merrill, sworn to Aug. 4, 2008, ¶¶ 5-11; affidavit of John McHale, sworn to Aug. 27, 2008 [McHale affidavit], ¶¶ 3-8). Defendant is a not-for-profit corporation created in 1962 by merger of Association for the Help of Retarded Children, Inc. (AHRC, Inc.)—originally formed in 1949—and the New York Association of Retarded Children, Inc. for the principal purpose of assisting mentally retarded individuals in New York State (affidavit of Marc N. Brandt, sworn to Sept. 8, 2008 [Brandt affidavit], ¶¶ 8-10). The original Chenango County group affiliated with defendant at the outset. On July 16, 1963— only four months after their initial meeting—the 15 individuals present at a meeting of the parents' group elected to seek affiliation with defendant (McHale affidavit ¶ 9, exhibit B). At a meeting held in October 1963, defendant's Board of Governors admitted the Chenango County group as a chapter and approved the bylaws adopted by the local group (Brandt affidavit ¶ 45, exhibit I).

From those early beginnings, the parties cooperated for over 40 years in serving the needs of developmentally disabled

individuals in Chenango County. During that time, plaintiff consistently conducted its operations in accordance with defendant's rules (Brandt affidavit ¶¶ 52, 53, 55, 57-59, 69-73) in developing programs that now serve hundreds of consumers, employ approximately 165 people, and generate annual revenue of nearly $10 million (McHale affidavit ¶¶ 13-30). The present dispute arose in 2006 and 2007 over the most appropriate method for restructuring the legal relationship of defendant and its local chapters to insulate defendant from liability for local chapter operations and each local chapter from the liabilities of all other chapters. This issue first began to receive serious consideration in approximately 2000 as a result of an increasing concern that the operations conducted by the local chapters exposed them to potentially significant liability for repayment of fees that they had received for providing services to Medicaid recipients (*id.* ¶¶ 48-53; Brandt affidavit ¶¶ 60-65).

Defendant's Board of Governors appears to be giving primary consideration to a proposal intended to address that concern by incorporating each chapter as a separate subsidiary of defendant. Under that proposal, the members of the local chapters would be empowered to elect the chapter's Board of Directors, which would be vested—as they are in defendant's current structure—with the general power and duty to manage day-to-day local operations. Plaintiff, on the other hand, proposes to insulate itself from the liabilities of other chapters by separately incorporating as an independent not-for-profit corporation that would take legal title to the assets currently used in local chapter operations. Under plaintiff's proposal, it would obtain continuing administrative support from defendant following reorganization on a contractual basis. In January 2007, following defendant's rejection of plaintiff's proposal, plaintiff's Board of Directors voted to disaffiliate from defendant and thereafter commenced this action.

Capacity to Maintain Action

As an initial matter, the court must consider defendant's motion to dismiss for lack of standing (*see generally Gilman v Abagnale*, 235 AD2d 989 [1997]). Inasmuch as defendant asserts that plaintiff lacks standing because it "is a part of NYSARC and therefore has no separate legal identity or capacity to initiate this action" (answer at 8), its objection to plaintiff's status is properly understood as questioning legal capacity, not standing (*see Security Pac. Natl. Bank v Evans*, 31 AD3d 278, 279 [2006], *lv dismissed* 8 NY3d 837 [2007]; *see also Community*

*Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 154-155 [1994]).

Whether plaintiff has legal capacity to maintain this action turns on whether it is an independent unincorporated association, which must be determined by examination of the governing documents that define the privileges and duties of those claiming to be its members (*see generally Polin v Kaplan*, 257 NY 277, 281-282 [1931], *rearg denied* 257 NY 579 [1931]; *Martin v Curran*, 303 NY 276 [1951]; *Matter of Desir v Spano*, 259 AD2d 749 [1999]). In this case—there being no allegation of fraud or corruption by defendant—the applicable governing documents include defendant's rules, with which plaintiff agreed to abide upon affiliation with defendant (*see Resource Ctr. v NYSARC, Inc.*, 74 AD3d 1750 [2010] [action involving an attempted disaffiliation by another local chapter of defendant]; *see also Bradley v O'Hare*, 11 AD2d 15, 29 [1960]; *Associated Gen. Contrs. of Am., N.Y. State Ch. v Lapardo Bros. Excavating Contrs.*, 43 Misc 2d 825 [1964]; *New York State Soccer Football Assn. v United States Soccer Football Assn.*, 18 Misc 2d 112, 116 [1958]; *Leon v Chrysler Motors Corp.*, 358 F Supp 877, 885 [1973], *affd* 474 F2d 1340 [1973] [applying New York law]).

Plaintiff's claim that it is an independent unincorporated association is fundamentally at odds with the governing documents of both parties, which depict an organizational structure in which the local chapters are local operational units of defendant. The provisions of defendant's Chapter Manual—which were adopted prior to the time when plaintiff became a local chapter—provide for creation of local chapters only upon issuance of a certificate of recognition by defendant (*see* Brandt affidavit, exhibit C [defendant's current Chapter Manual]; *see also* Brandt affidavit, exhibit G [Chapter Manual of defendant's predecessor, AHRC, Inc., which contains substantially similar provisions]). It defines the status of local chapters as geographic units of defendant, responsible within their respective territories for conducting activities in furtherance of defendant's mission, requires that each local chapter abide, at all times, with the rules, regulations, and policies of defendant, and mandates that each local chapter adopt bylaws in a form approved by defendant (*id.*).[1]

As required, plaintiff's own bylaws are in the form mandated by defendant's rules and specifically state that plaintiff's

---

1. The extensive activities that plaintiff has historically undertaken, which it argues are evidence of its independent existence, are specifically authorized

purpose is: "[T]o act locally for [defendant] in accordance with the Certificate of Incorporation and By-Laws of [defendant] and in conformity with its Chapter Manual and such rules, regulations and policies as [defendant] may from time to time prescribe" (Brandt affidavit, exhibit J [plaintiff's bylaws], art II). Plaintiff's bylaws further provide that all powers granted to plaintiff's Board of Directors are subject to defendant's rules (*id.*, art VI, § 6), that defendant's bylaws and Chapter Manual govern all matters not specifically addressed in plaintiff's bylaws (*id.*, art XV [*sic*], at 11), and that, in the event of conflict, defendant's bylaws govern (*id.*).

The fact that plaintiff has no independent members is particularly telling evidence that it lacks an independent legal existence as an unincorporated association. Examination of the governing documents reveals that membership in a local chapter is merely an incident of, and is subordinate in all respects to, membership in defendant. All individuals who claim membership in a local chapter are also members of defendant, which alone determines eligibility for membership, sets annual membership dues, and has the ultimate authority to discipline members (Chapter Manual, § I-2.0 [defendant's bylaws], art I; plaintiff's bylaws art IV).

The rules pertaining to the significant issue of ownership of property utilized in local chapter operations also serve to illustrate that plaintiff is but a local geographical unit of defendant, by establishing that plaintiff lacks ownership of the assets used in its operations. The rules specifically provide that

> "all funds and property given to or received by any Chapter shall belong to and be trust funds and property of [defendant], to be held for the beneficial use of people with mental retardation or other developmental disabilities in the area or sphere of activity of the Chapter in accordance with the purposes and provisions of [defendant's] Certificate of Incorporation and By-Laws" (Chapter Manual § III-4.0; *accord* Chapter Manual of AHRC, Inc., art III [C] [5]; *see also* Chapter Manual § II-3.0; *Resource Ctr.*, 74 AD3d 1750 [2010]).[2]

---

by defendant's rules, which afford chapters significant autonomy in managing operations to meet local needs.

**2.** Under these rules, all assets currently possessed by plaintiff are defendant's property, required to be held and utilized in accordance with defendant's rules to benefit people with mental retardation or other developmental dis-

The conclusion that plaintiff lacks an independent existence is further apparent from the rules pertaining to dissolution of a chapter, which apply to plaintiff's attempted disaffiliation from defendant, inasmuch as disaffiliation would—like dissolution—terminate plaintiff's status as a local chapter of defendant (*see Resource Ctr.*). There are no provisions specifically authorizing a local chapter to—as plaintiff proposes—forge a separate identity by withdrawing, or disaffiliating, from defendant while retaining the property then in its possession. Rather, the applicable rules reinforce defendant's primacy, by providing for continued membership in defendant by those individual members previously affiliated with a dissolving chapter and for continuation of services, following dissolution, by defendant, not by a successor to a dissolved local chapter (*see Resource Ctr.*; Chapter Manual § II-3.0).

The only logical conclusion that may be drawn from the documents governing the parties' legal relationship is that plaintiff is a local operational unit of defendant which has no separate and independent legal existence as an unincorporated association. In light of that determination, defendant's motion to dismiss the complaint, on the basis that plaintiff lacks the legal capacity to maintain this action, must be, and hereby is, granted (*see Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d at 159). The parties' remaining motions have not been considered.

---

abilities in the geographical area where plaintiff currently operates. Plaintiff may not claim equitable title in such property as evidence of an independent existence apart from defendant, inasmuch as it has at all times since 1964 represented itself as one of defendant's chapters and received the benefits of being such a chapter without objecting to the applicability of defendant's bylaws and rules (*Resource Ctr.* at 1751, citing *Episcopal Diocese of Rochester v Harnish*, 11 NY3d 340, 352 [2008]; *see also Presbytery of Hudson Riv. of Presbyt. Church [U.S.A.] v Trustees of First Presbyt. Church & Congregation of Ridgeberry*, 72 AD3d 78, 94-98 [2010], *lv denied* 14 NY3d 711 [2010]).