■ WILLIAM C. CRAINE, as President of the Chenango County Chapter, NYSARC, Inc., Appellant, v NYSARC, INC., Respondent. [931 NYS2d 143]—

Garry, J.

In 1963, a group of parents in Chenango County formed a group for the purpose of improving opportunities for the education, care, and vocational training of their developmentally disabled children. Shortly thereafter, the group became the Chenango County Chapter of NYSARC, Inc. (hereinafter Chapter), by affiliating with defendant, a not-for-profit corporation with the principal purpose of assisting developmentally disabled individuals in New York State. The Chapter has since been providing services to Chenango County's developmentally disabled residents through operations including, among other things, community residences, day habilitation and respite

programming, and mental hygiene, social work and dental services. The Chapter covers the expenses of its activities with its own revenues, a significant portion of which are derived from its sheltered employment program, a packaging plant with average annual revenues of $4.1 million. In support of its operations, the Chapter has purchased various parcels of real property valued collectively at about $6 million.

Defendant recently reevaluated its corporate structure because of concerns about the potential that defendant or its chapters could be held responsible for liabilities of another chapter. The Chapter objected to defendant's proposed restructuring and, instead, sought defendant's approval to incorporate separately while continuing a relationship with defendant on a contractual basis. Defendant refused to approve this plan and plaintiff, the Chapter's president, then commenced the instant action seeking, among other things, a judgment declaring that the Chapter is a separate and distinct entity from defendant and that the Chapter can incorporate, and directing defendant to transfer any assets held in defendant's name for the benefit of the Chapter to the newly incorporated organization. Defendant answered, raising several counterclaims and asserting affirmative defenses, including plaintiff's lack of standing and capacity to sue. After discovery, both parties moved for summary judgment. Supreme Court granted defendant's motion on the ground that plaintiff lacked capacity to sue and, therefore, it declined to decide, among other things, plaintiff's motion. Plaintiff appeals.

Supreme Court held that plaintiff lacked the capacity to sue, finding that the Chapter is merely an operational unit of defendant with no separate legal existence as an unincorporated association. We disagree. "[T]he word 'association' is a broad term which may be used to include a wide assortment of differing organizational structures" (*Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476, 482-483 [1979]). An unincorporated association has been broadly defined as a "voluntary congregate entit[y]" (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155 [1994]). Here, defendant undeniably exercises significant control over the Chapter, which operates under defendant's oversight and supervision pursuant to defendant's bylaws, chapter manual (hereinafter the manual), policies, and other documents governing the parties' relationship. The manual defines a chapter as "the basic organizational unit of [defendant], responsible within its territory for carrying out [defendant's] activities." The governing documents provide, among other things, that defend-

ant's chapters must operate in accord with defendant's bylaws, rules and policies, that the powers granted to a chapter's board of directors are subject to defendant's rules, and that defendant's bylaws govern in any matter not specifically covered by a chapter's bylaws or in the event of any conflict. However, these documents also grant considerable local autonomy to each chapter. Among other things, the Chapter elects its own officers and board of directors, has its own federal employer identification number, state operating licenses and tax exempt status,[1] files its own fiscal reports and tax returns, maintains its own bank accounts, hires, trains and pays its own employees, and operates its own programs and purchases real property from its own revenues, independent of any financial contribution from defendant. Moreover, other chapters of defendant have commenced litigation in their own right, including litigation against defendant (*see e.g. Resource Ctr. v NYSARC, Inc.*, 74 AD3d 1750, 1750 [2010]; *New York Assn. for Retarded Children, Montgomery County Ch. v Keator*, 199 AD2d 921, 922 [1993]).[2] Given these markers of autonomy, we find that the Chapter has sufficient separate existence to be considered an unincorporated association such that plaintiff, as its president, had capacity to commence this action (*see* General Associations Law § 12; CPLR 1025; *Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d at 155; *Matter of Stephentown Concerned Citizens v Herrick*, 223 AD2d 862, 864 n 2 [1996], *lv dismissed and denied* 96 NY2d 881 [2001]; *see also Kirkman v Westchester Newspapers, Inc.*, 287 NY 373, 379-381 [1942]).

In view of this determination, plaintiff asks that we address the substantive issues raised in the parties' motions regarding the Chapter's ability to sever its relationship with defendant and the consequences of such a severance. In the interest of judicial economy, we will exercise our authority to search the record and, insofar as possible, address the merits of the parties' respective summary judgment motions (*see Nelson v Sweet Assoc., Inc.*, 15 AD3d 714, 716 n [2005]; *Mazzocki v State Farm*

1. Before acquiring separate tax exempt status, the Chapter enjoyed that status under defendant's group tax exempt ruling.

2. Plaintiff submits an affidavit from a previous federal court action, in which defendant took the position that its chapters had sufficient independence as separate entities to be sued, and thus that an action commenced against defendant by a chapter employee should have been commenced solely against the chapter instead. However, contrary to plaintiff's claim, defendant's prior position does not preclude it from arguing that plaintiff lacks capacity to sue in this action, as the record does not reveal that defendant obtained relief by asserting this position in the prior matter (*see Matter of Stewart v Chautauqua County Bd. of Elections*, 14 NY3d 139, 149-150 [2010]).

*Fire & Cas. Corp.*, 1 AD3d 9, 12 [2003]). Initially, plaintiff contends that as an unincorporated association, it can, among other things, "disaffiliate" from defendant, reorganize as a corporation, and continue its activities without invoking provisions in the governing documents that control the dissolution of a chapter. Our determination that the Chapter is an unincorporated association for purposes of its capacity to sue does not mandate this conclusion; the issue is determined by the bylaws and other governing documents, which constitute the contract defining the privileges and duties assumed by the parties (*see Polin v Kaplan*, 257 NY 277, 281 [1931]; *Matter of Desir v Spano*, 259 AD2d 749, 749-750 [1999]; *see also Matter of Willard Alexander, Inc. [Glasser]*, 31 NY2d 270, 273 [1972], *cert denied* 410 US 983 [1973]). Defendant requires its chapters to adopt model bylaws set forth in the manual, without modification or amendment, except as approved by defendant's board of governors. The Chapter's bylaws require it to "act locally for [defendant] . . . in conformity with [the manual] and such rules, regulations and policies as [defendant] may from time to time prescribe," and defendant's bylaws provide, in turn, that its chapters are required to function under the manual. These documents plainly establish that the Chapter's organization as such is governed by defendant and, thus, that the Chapter must abide by defendant's manual, bylaws and rules so long as it retains its status as a chapter.

We find no support within these documents for plaintiff's theory that the Chapter can sever its relationship with defendant by "disaffiliating" rather than by dissolving as a chapter. No provisions pertaining to disaffiliation appear in the manual or elsewhere in the governing documents. The termination of a chapter's status as such is addressed in a section of the manual entitled "Dissolving a Chapter." This provision states, among other things, that "[surrender] of [a chapter's] Certificate of Recognition is a voluntary dissolution of [the] [c]hapter by its members" and that a chapter's certificate may also be withdrawn by defendant's board of governors.[3] The provision further states that upon the dissolution of a chapter, defendant may take over the chapter's former operations and activities and conduct meetings of the former chapter's members, whose status as members of defendant is unaffected by the chapter's dissolution. Under these provisions, any severance by the Chapter of its relationship with defendant must constitute a

---

**3.** The manual provides that defendant issue a certificate of recognition as the final step in its approval of the formation of a new chapter, in order to acknowledge the new chapter's "entity as a [c]hapter of [defendant]."

dissolution, even if its members continue operating as a group thereafter, since it would necessarily result in the loss of defendant's recognition of the chapter (*see Resource Ctr. v NYSARC, Inc.*, 74 AD3d at 1751). Accordingly, defendant is entitled to partial summary judgment insofar as it seeks a determination that the Chapter's plan to sever its relationship with defendant is governed by the manual's provisions pertaining to dissolution.

These provisions do not, however, permit a complete determination of the consequences such a severance may have on the Chapter's property and assets.[4] We find no authority in the governing documents for the Chapter's demand that, upon its reorganization, defendant should be directed to convey all of its former assets to the newly formed corporation—but we also disagree with defendant's contention that the manual affirmatively requires the Chapter, if it dissolves, to surrender all of its property to defendant. The plain language of the subject provision places no obligations on the dissolving chapter or its members, but instead imposes limitations on defendant's use of any property "coming into [its] possession" upon the dissolution of a chapter by requiring defendant to use the property only within that chapter's "territory or sphere of activity."

Nevertheless, the Chapter's ability to own and control property is strictly limited by other provisions in the governing documents. A provision of the manual entitled "Finance" states, in part, that "[a]ll funds and property given to or received by any [c]hapter shall belong to and be trust funds and property of [defendant], to be held for the beneficial use of people with mental retardation or other developmental disabilities in the area or sphere of activity of the [c]hapter." As to real property, the manual requires defendant's chapters to take title either as a chapter of defendant or, at the chapter's option, in the name of a holding company. Where property is titled in the name of a chapter of defendant, the manual provides that defendant must hold the property "for the beneficial use of the [c]hapter . . . unless the [c]hapter ceases to exist." In our view, the only reasonable interpretation of this provision is that property titled in this fashion is owned by defendant and that the Chapter is

---

4. Contrary to defendant's claim, this determination is not governed by the provision in N-PCL 516 (a) that "the interest of a member in the property of a corporation shall terminate upon the termination of his [or her] membership," because defendant's bylaws and manual provide unambiguously that only "individuals" may be members of defendant and, further, that dissolution of a chapter does not affect membership in defendant. No provision is made for membership by chapters or other organizational entities.

entitled to its beneficial use only so long as it retains its status as a chapter.[5]

However, not all of the Chapter's property is titled to defendant. The record indicates that the Chapter has also exercised its option to title some of its real property to its holding company. The manual provides chapters with a vehicle for separate local ownership of real property by authorizing them to form holding companies to take title to real property and establishes general requirements for the organization and operation of these corporations; however, it includes no provisions establishing the effect of a chapter's dissolution on its holding company or on property titled to the holding company. Nor does the record include the organizational documents of the Chapter's holding company, or other extrinsic evidence that might permit such a determination. The record is similarly inadequate with regard to any other funds, property or business assets that the Chapter may currently hold. Accordingly, this matter must be remitted to Supreme Court to determine the remaining questions in the action, including the effect that the Chapter's severance of its relationship with defendant, if it occurs, will have on ownership of real property titled to the Chapter's holding company, and any other personal property, funds or assets that may be currently owned or managed by the Chapter.

Mercure, J.P., Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted defendant's motion for summary judgment and dismissed the complaint on the ground that plaintiff lacked capacity to sue; said motion denied to that extent, plaintiff's motion for summary judgment granted to the extent of declaring that plaintiff has capacity to commence this action, defendant's motion granted to the extent of declaring that the Chenango County Chapter of NYSARC, Inc. is required to abide by defendant's chapter manual, bylaws and other policies in the event that it withdraws from its status as a chapter of defendant, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. **[Prior Case History: 29 Misc 3d 559.]**

---

5. An unincorporated association has no power to own or acquire real property in its own right (*see Schein v Erasmus Realty Co., Inc.*, 194 App Div 38, 40 [1920]; 2-23 Warren's Weed, New York Real Property § 23.09 [2011]).